ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

OCTOBER TERM, 1909.

*(Continued from Volume 145)*

B. ROTH TOOL COMPANY, Respondent, v. CHAMP SPRING COMPANY, Appellant.

St. Louis Court of Appeals. Argued and Submitted November 4, 1909. Opinion Filed November 30, 1909.

1. **PLEADING: Third Petition: Motion to Strike Out.** The decision in Roth Tool Company v. Champ Spring Company, 122 Mo. App. 603, to the effect it is only when a motion or demurrer destroys the petition, after two like motions or demurrers have been sustained, that sections 621 and 623, Revised Statutes 1899, operate and make it mandatory to dismiss the cause and assess treble costs against the plaintiff, is reaffirmed.

2. **APPELLATE PRACTICE: Judgments: Former Decision: Res Judicata.** A decision of the Court of Appeals on a former appeal is the law of the case, and such decision is *res adjudicata* between the parties on a subsequent appeal, whether the conclusion arrived at by the court was right or wrong in law, and whether, upon the facts, its conclusion was correct or incorrect.

3. **TRIAL PRACTICE: Reference: Statutory Right.** Reference is a matter of purely statutory right, and unless the case in which it is asked or in which it is granted is within the statute, the parties not consenting, the court has no power to grant it.

4. ———: ———: **Reference not Warranted Under Facts.** In an action for damages resulting from breach of a covenant in a lease in shutting off steam power from the demised premises, preventing the tenant from operating the plant for several days, the damages claimed being loss of profits, a compulsory reference was properly refused, the ascertainment of the damages not involving the taking of an account, nor presenting a question of fact arising outside the pleadings or beyond the scope of intelligent comprehension by an ordinary jury.

5. **EVIDENCE: Books of Account.** In an action for damages resulting from breach of a covenant in a lease in shutting off steam power from the demised premises, preventing the tenant from operating the plant for several days, the damages claimed being loss of profits, the books, kept by plaintiff in the course of its business, were admissible in evidence.

6. ———: ———: **Synopsis Prepared from Books.** A synopsis of such books, showing receipts and expenditures, prepared by a witness competent to take it, who swore it was correctly taken from the books, was admissible in evidence.

7. **LANDLORD AND TENANT: Lease: Stipulation for Damages: Construction.** A stipulation in a lease that if the lessor failed to furnish steam power to operate lessee's plant, as agreed therein, the lessee should be allowed for the same did not stipulate for liquidated damages for the lessor's failure to furnish power, nor authorize him to determine what sum should be allowed for such failure.

8. ———: ———: **Covenant Running with Land.** A stipulation in lease of premises for a machine shop that the lessor should furnish power sufficient to operate the lessee's plant was a real covenant running with the property, the lease being assignable.

9. ———: ———: **Breach of Covenant: Damages.** In an action by the lessee for breach of the lessor's covenant to furnish steam power to operate the lessee's machine shop in the leased premises, plaintiff was entitled to recover such a sum as would adequately compensate it for loss of profits in its business by being deprived of the use of such power operating its machinery, less rent due for the period it was deprived thereof.

10. ———: ———: ———: ———: **Excessive Verdict.** In such a case, where the evidence showed the average net monthly receipts for the year were $1102, and that for August and October, 1901, they were, respectively $2768 and $1108—an avererage of $1938 per month—and that for September, 1901, during half of which month the plant was shut down on account of the power being shut off, they were only $365, an award of actual damages of $1216 was not excessive.

11. **APPELLATE PRACTICE: Punitive Damages: Award of Jury Conclusive: Passion and Prejudice.** Where there is sufficient evidence to warrant an instruction on punitive damages, correct instructions are given, and the jury keep within the instructions, as to amount, the appellate court will not interfere, unless it clearly appears the amount awarded shows passion or prejudice on the part of the jury, which cannot be said of an award of $808 as punitive damages in this case.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel G. Taylor,* Judge.

AFFIRMED.

*Wm. F. Smith* and *R. M. Nichols* for appellant.

(1) The court erred in refusing to dismiss plaintiff's petition because parts of three amended petitions had been stricken out, by reason whereof, the court lost jurisdiction to proceed further in the case; Munford v. Keet has been overruled. Sidway v. Land & Live Stock Co., 197 Mo. 359; Spurlock v. Railroad, 93 Mo. 13; Beardslee v. Morgner, 73 Mo. 22. (2) The decisions of this court in the B. Roth Tool Company v. Champ Spring Company, 122 Mo. App. 603, did not follow the last previous ruling of the Supreme Court on the question involved. Sidway v. Land & Live Stock Company, although rendered, was not reported, and this court's attention was not called to that case as the last previous ruling. The ruling in that case is inconsistent with the law as declared in previous decision of this court in this case. Sedalia v. Gold, 91 Mo. App. 32; Sparks v. Life Indemnity Co., 61 Mo. App. 109; Bird v. Sellers, 122 Mo. 23. (3) Tenancy created by the lease shown in evidence was a tenancy at will, because it could be terminated upon six months' notice at the will of either party. Being a tenancy at will, an assignment of the lease by the lessees to the B. Roth Tool Company, destroyed or defeated the estate created by the lease. Meier v. Thiemann, 15 Mo. App. 308; McLaran v.

Roth Tool Co. v. Spring Co.

Benton, 73 Cal. 229; Stay v. Stoddard, 27 Oh. St. 478; Park v. Tennille, 20 Ga. 111; Whittemore v. Gibbs, 24 N. H. 488; Cunningham v. Halton, 55 Me. 36; Packard v. Railroad, 46 Ill. App. 245; Doak v. Donaldson's Lessees, 24 Am. Dec. 488; Cooper v. Adams, 6 Cush. (Mass.) 87; Dingley v. Buffen, 57 Me. 381; Saw v. Hill, 79 Mich. 84; Austin v. Thompson, 45 N. H. 117.   (4) The right to terminate the tenancy at the will of either party creates an estate at will, and while the tenancy was for a part of a year, it is placed in that class of estates for years only for the purpose of notice—in effect, it is still a tenancy at will.   1 Washburn on Real Prop., tit. Estates at Will (8 Ed.), sec. 777, p. 484; 11 Am. and Eng. Ency. Law, p. 381; Rich v. Bolton, 46 Vt. 87; Harrison v. Middleton, 11 Grattan 527; Johnson v. Johnson, 13 R. I. 467; Phillips v. Coverts, 7 Johns 1; Denn v. Drake, 14 N. J. L. 529.   (5)   The tenancy at will created by the written lease having ceased by an assignment by the lessees to the B. Roth Tool Company, the covenant to furnish steam, although it would run with the land, could not inure to the present plaintiff, if an assignment had been shown, because of the destruction of the lease by the assignment. 1 Washburn on Real P., tit. Estates at Will (6 Ed.), sec. 765, p. 478; Reckhow v. Schanck, 43 N. Y. 448; Estey v. Baker, 50 Me. 333; King v. Lawson, 98 Mass. 309.   (6)   There was no breach of the contract shown. The provision or stipulation to furnish steam, contained also an alternative provision in the following words, "In the event of the party of the first part from any cause whatever, failing to furnish power or steam, to operate the plant of the party of the second part, during the hours herein mentioned, they agree to allow them for the same."   This provision modified the obligation to furnish steam allowing the defendant to deduct or allow plaintiff on its rent obligation the value of the steam, if defendant elected not to furnish it, without a

breach of contract. 2 Page on Contracts, secs. 1168 and 1391; Smith v. Bergengren, 153 Mass. 236, * 26 N. E. 690; Curnan v. Railroad, 138 N. Y. 480, 34 N. E. 201; Kramer v. Ewing, 10 Okla. 357; 61 Pac. 1046, 9 Cyc. of L. and P. 647; 2 Wharton on Contracts, tit. "Alternative Promises," p. 1, secs. 619 to 624. (7) The law of the case is limited to the points expressly decided. The case pleaded as an estoppel did not construe the provision of the lease with reference to the alternative clause nor with reference to an assignment of a tenancy at will upon the covenants in the lease; the decision was upon other grounds. Therefore, there is no *res adjudicata* of these points. Haynes v. Trenton, 123 Mo. 335; Rutledge v. Railroad, 123 Mo. 131; Wesler v. Graham, 60 Mo. App. 327; B. Roth Tool Co. v. New Amp. Cas. Co., 161 Fed. R. 709; Gas Co. v. Dist. of Col., 161 U. S. 316, 40 L. Ed. 712. (8) The judgment plead in estoppel does not expressly cover the points, that the assignment of the lease at will, defeats the lease, or that the covenant to furnish steam was satisfied by the alternative provision of the lease. If these points are covered by inference and establishes a different proposition of law, the case ought to be overruled. The case is not the law if it establishes a different principle. Bird v. Sellers, 122 Mo. 23; Rutledge v. Railroad, 123 Mo. 121; Wilson v. Beckwith, 140 Mo. 369; Williams v. Butterfield, 214 Mo. 429; Leicher v. Keeney, 110 Mo. App. 292. (9) Prospective profits can only be recovered in an action for breach of contract where it would reasonably be presumed to have been contemplated by the parties when they made the contract. The alternative provision of the contract clearly negatives the idea that the parties could intend that prospective profits could be recovered, but carries the idea that the lessor could allow the lessee for the steam. Howard v. Stillwell & Co., 139 U. S. 199, 35 L. Ed. 147; Mining Co. v. Humble, 53 U. S. 540, 38 L.

Ed. 814; Primrose v. Tel. Co., 154 U. S. 29, 38 L. Ed. 894; Hoskins v. Scott, 96 Pac. 1112; Cycle Co. v. Clark, 157 Ind. 276, 61 N. E. 561; see note, "Loss of profits as element of damages for breach of contract," to Wills v. Nat. Life. Assn., 53 L. R. A. 33; Witherbee v. Meyer, 155 N. Y. 446, 50 N. E. 58; Nemrow v. Assembly C. & S. Co., 121 App. D. (N. Y.) 481. (10) The allegation is that the loss sustained, by failure to furnish steam for two large hammers, was $1200, by reason of not being able to complete contracts. This is the only allegation in the petition. The allegation that it "was unable to do the work which was usually done on small hammers, except with loss of profits (a mere recital, but the only pretense of an allegation of the loss of profits) is no allegation. It is too general to tender an issue of fact. Loss of profits are special damages and they must be stated in the petition with reasonable certainty. Brown v. Railroad, 99 Mo. 310; Van Buskirk v. Railroad, 131 Mo. App. 357; Yongker v. Mercantile Co., 110 Mo. App. 382; Slaughter v. Railroad, 116 Mo. 269; Keen v. Railroad, 129 Mo. App. 301; Cole v. Railroad, 133 Mo. App. 440; Moellman v. Lumber Co., 134 Mo. App. 483; Stecker v. Coal & C. Co., 192 N. Y. 556; Shadduck v. Plank Road Co., 76 Mich. 7; Wilmer B. & Co. v. Weid, 108 Cal. 569, 41 Pac. 491; Thompson v. Gould, 16 Abb. Pr. (N. S.) 424. (11) Perhaps an expert witness who had examined the books might have testified as to the results as bearing upon the prospective profits, but no such testimony was offered. The proof offered upon the question of prospective profits was the synoptical exhibit or compilation from the books, which under the objections was incompetent, the books being the best evidence, if they were admissible. A jury could have understood the books as well as the compilation offered. Ritchie v. Kinney, 46 Mo. 298; Anderson v. Volmer, 83 Mo. 403; Cozens v. Barrett, 23 Mo. 544; Masonic Mutual B. S. v. Lackland, 97 Mo.

137; Bank v. Brown, 165 N. Y. 216, 53 L. R. A. 513, and note. (12) Account books of a party are not evidence except of a charge of a creditor against a debtor, when they stand to each other in that relation; and persons' books of accounts cannot be used in evidence upon issues between third persons. Such entries as to third persons are *res inter alios acta* and cannot be used against persons not parties to them. Plaintiff's books, being inadmissible as against defendant, computations by an expert from said books would be inadmissible. Bank v. Brown, 53 L. R. A. 513, and note; Bank v. Brown, 165 N. Y. 215; Bank v. Brown, 9 N. Y. Ann. Cases 140, and note; Hall v. Chambersburg Woolen Mill Co., 187 Pa. 18, 52 L. R. A. 689, and note; 2 Ency. of Ev., pp. 667 and 670, note 52. (13) The synoptical statement admitted in evidence is a mere conclusion or special verdict of the witness as to the amount of profits claimed to have been made monthly; it does not contain any of the elements, such as expenses, of rent, fuel, wages, insurance, interest, taxes and light, together with the amount taken in, from which the jury could say net profits were realized. In the absence of testimony as to these items of receipts and expenses, this court cannot say whether or not the damages complained of were the natural and approximate result of turning off the steam. Gildersleeve v. Overstolz, 90 Mo. App. 522. (14) A loss of profits upon business done in the entire factory cannot be recovered for failure to furnish steam to run "two large steam hammers." . . . Or "to do work which was usually done on small hammers with a loss of profits;" the averment of the petition does not claim loss of profits upon all work done in the entire factory, and therefore testimony showing loss of profits of entire factory was inadmissible. Connersville Wagon Co. v. McFarland Carriage Co., 3 L. R. A. (N. S.) 709, 76 N. E. 294; Phosphate Co. v. Graffing, 58 Fed. Rep. 550; Watson v.

Kirby, 112 Ala. 436; McKinon v. McEwan, 48 Mich. 106, 42 Am. Rep. 458; Lafayette Quay v. Railroad, 18 L. R. A. (N. S.) 250, 116 N. W. 1101. (15) The testimony shows no circumstance of malice or of gross negligence or that the act complained of was wanton or malicious; but the testimony does show that the act of turning off the steam was done in good faith, under the belief that the tenancy was one at will, and had terminated, and, therefore, instructions for punitive damages were not warranted. McMenamy v. Cohich, 1 Mo. App. 529; Pruitt v. Quarry Co., 33 Mo. App. 18; O'Brien v. Loomis, 43 Mo. App. 29; Ickenroth v. Transit Co., 102 Mo. App. 597; Morgan v. Durffee, 69 Mo. 469; McNamara v. Transit Co., 182 Mo. 676; Leahy v. Davis, 121 Mo. 232; Calcaterra v. Iovaldi, 123 Mo. App. 343. (16) Instruction for punitive damages is erroneous, because it does not submit the question as to whether the act of turning off the steam was with or without justifiable cause or excuse. Ickenroth v. Transit Co., 102 Mo. App. 615; McNamara v. Transit Co., 182 Mo. 681. (17) There is no item of damage proven upon which to base the verdict of punitive damages, such as cost and expenses incurred. Punitive damage is not a "grab;" nor do they depend upon the prejudice or whim of the jury. Such damages must have some basis in the evidence. Hanna v. Sweeney, 4 L. R. A. (N. S.) 907, and note. (18) The leading questions asked by the judge amount in themselves to a comment upon the testimony, in favor of the plaintiff, and are so framed as to impress the jurymen of the judge's approval of the testimony and his indorsement of it, and this had the effect to prejudice the jury in favor of such testimony as against the defendant. Dunn v. People, 172 Ill. 582, 50 N. E. 137; State v. Crotts, 22 Wash. 245, 60 Pac. 403; State v. De Pasquale, 81 Pac. 689; Finn v. Ferry, 127 Cal. 648, 60 Pac. 434; Schmidt v. Railroad, 149 Mo. 282; Bolt v. Railroad, 38 App. Div. 234; Knox v. Fuller, 23 Wash.

34, 62 Pac. 131; Barlow Bro. v. Parsons, 73 Conn. 696, 43 Atl. 205. (19) The sarcastic and deprecatory remarks of the court as to the defendant's counsel's position, his learning or intelligence, his sincerity in his objection, his cross-examination, the time being needlessly consumed therein, the length of time the case has been pending, and as to the unnecessary time consumed in the trial, prejudiced the jury against the defendant and his cause; from these remarks the jury drew an inference as to the judge's opinion, of the defense made. It was error. State v. Allen, 100 Iowa 7; State v. Manhattan R. Mfg. Co., 149 Mo. 181; Sanders v. Railroad, 134 Mo. App. 80; Wheeler v. Wallace, 53 Mich. 355; Rose v. Kansas City, 125 Mo. App. 231; Septowski v. Wanset Co., 108 Mo. App. 307. (20) The action being for a breach of covenant of the lease, not trespass or *ex delicto,* the measure of damages is the difference in the value of the premises with the steam furnished and value not furnished, and not speculative profits, as in an action of tort. Hughes v. Hood, 50 Mo. 350; Gildersleeve v. Overstolz, 90 Mo. App. 518; Schlemmer v. North, 32 Mo. 206; Wolff Skirt Co., v. Frankenthal, 96 Mo. App. 307; Dunnevant v. Mocksoud, 122 Mo. App. 436; Wilson v. Weil, 67 Mo. 399; Graves v. Ry., 69 Mo. App. 574; Howard v. Stillwell & Co., 139 U. S. 199, 35 L. Ed. 147; Mack v. Patchin, 43 N. Y. 167; Witherbee v. Meyer, 155 N. Y. 446, 50 N. E. 58; DeFord v. Steel Co., 113 Fed. R. 72, 51 C. C. A. 59. (21) There were no orders shown to be on hand for the manufacture of machinery, which plaintiff was prevented from filling by the act of the defendant in turning off the steam for ten days. No recovery can be had for loss of profits on the basis of continued manufacture and sale from the time of interference, as that would be purely speculative. Jones v. Call, 96 N. Caro. 337, 60 Am. Rep. 416; Allison v. Chandler, 11 Mich. 542; Giaccomini v. Bulkeley, 51 Cal. 261; Hawthorne v. Sigel, 88 Cal. 159, 25 Pac.

1114; Hoskins v. Scott, 96 Pac. 1112 (Oreg); Cigarette M. Co., v. Wells, Whitehead Tob. Co., 8 L. R. A. (N. S.) 255, and note; McNeil Bro. v. Crucible S. Co., 207 Pa. 493, 56 Alt. 1067; Smith v. Hicks, 19 L. R. A. (N. S.) 938. (22) The court erred in not granting a reference of said cause, for the reason that if plaintiff is entitled to recover general profits, then the ascertainment of plaintiff's alleged damage in loss of prospective profits necessitated inspection of various items forming the subject-matter of an account in order to ascertain the net profits of the business for prior and subsequent dates, and, therefore, brought the case within the first and second subdivisions of the statutes, authorizing the court to direct a reference. R. S. 1899, sec. 698; Ittner v. St. Louis Exposition & Music Hall Assn., 97 Mo. 561; Bank v. Owen, 101 Mo. 558; McCormick v. City of St. Louis, 166 Mo. 315. (23) There was no averment in the petition of an assignment of the lessees' interest in the lease to the plaintiff; there was a recital that the lessees were "incorporated as a body-incorporate under the name of B. Roth Tool Company and all property and effects were turned over to said corporation;" there was no evidence of an assignment produced. Mere occupancy will not suffice. Bailey v. Ofenstein, 7 Mo. App. 577; Samson v. Caperdown, 64 Fed. R. 939. (24) The compensatory damages of $1216 would be at the rate of over $126 per day for ten days. The contract price of the rent and steam was $140 for 30 days, or a little over $4 per day. The capital stock of the plaintiff was $30,000, the interest upon which, at 6 per cent, would be $5 per day, or $50 for the ten days. If the plant was allowed to lie idle, which it was shown it did not, the damages would not exceed $9 or $10 per day, and, therefore, the damages are excessive. McKinnon v. McEwan, 48 Mich. 106, 42 Am. Rep. 458.

*Ed. L. Gottschalk* for respondent.

(1) Appellant's first point is not a matter that now should be considered. This court, having passed on this petition and declared it good, and reversed the judgment of dismissal, the court below was bound to act and consider the opinion of this court as the law of this case. This point would simply be an attempt to secure a rehearing of the former appeal. Tool Co. v. Champ Spring Co., 122 Mo. App. 603. The Sidway v. Mo. L. & L. S. Co., 197 Mo. 359, is not a parallel case. In the case at bar the court of appeals decided the petition sufficient; in the Sidway case it was insufficient; the latter case does not decide that, if sufficient remains, the plaintiff cannot proceed on what is left if it constitutes a cause of action (without the part stricken out). Furniture & Carpet Co. v. Davis, 86 Mo. App. 296; Wolf v. Ins. Co., 86 Mo. App. 584; Lawson v. Spencer, 90 Mo. App. 514. (2) The question of whether this plaintiff (respondent) was a tenant at will or whether the assignment destroyed or defeated the estate created at will has been settled. Tool Co. v. Champ Spring Co., 93 Mo. App. 530; also cases cited in point. (3) The question of whether plaintiff is limited to a pro rata allowance of rent, we submit, is passed on in the injunction suit. Tool Co. v. Spring Co., 93 Mo. App. 530. (4) The lease is valid, and the plaintiff was defendant's tenant, and the assignment binding on defendant. Tool Co. v. Spring Co., 93 Mo. App. 530, 96 Mo. 518. (5) The plaintiff was entitled to damages to its business or profits of business, also punitive damages. Gildersleeve v. Overstolz, 90 Mo. App. 518. (6) On the question of books being competent, or an expert can give a synoptical exhibit, we refer to the following: Milling Co. v. Walsh, 108 Mo. 277; Stephan v. Metzger, 95 Mo. App. 609; Borgess Inv. Co. v. Vette, 142 Mo. 560; Robinson v. Smith, 111 Mo. 205; Seligman v. Rogers, 113 Mo. 642.

STATEMENT.—Under date of March 15, 1897, the Champ Spring Company made a lease to Wm. Boeffer, Chas. A. Roth and E. B. Roth of certain premises in the city of St. Louis, the lease covering the buildings and improvements then on the premises, excepting certain portions thereof either leased to another or retained by the lessor, "to have and to hold unto the parties of the second part, their successors or assigns, during a term of one year, commencing on the 15th day of June, 1897, and ending on the 15th day of June, 1898, they to pay rent for said premises, which includes steam and power sufficient to run their plant, six days in the week, during the hours of and between 7 a. m. and 6 p. m. (except legal holidays), to the party of the first part, its successor or assigns, at the rate of one hundred and forty-five dollars per month ($145), payable in advance, for and during the term of their lease. Provided always nevertheless if the rents above reserved be not paid when same shall become due and payable as above set forth, then this lease shall be void. . .

"In the event of the party of the first part, from any cause whatsoever, failing to furnish power or steam, to operate the plant of the party of the second part, during the hours herein mentioned, they agree to allow them for same. . . .

"This lease may be terminated any time after June 15, 1898, by either party giving six months' notice in writing."

There is no covenant against assignment whether with or without the consent of the lessor in the lease itself.

It appears by the evidence in the case that Boeffer and Chas. A. and E. B. Roth were carrying on the trade of blacksmithing and tool makers, or as a witness said, "the tool, forge and machine business," under the name of B. Roth Tool Company, a partnership which, some time in 1901, was incorporated under the name of B.

Roth Tool Company, and that after incorporation under that name, these same lessees, but as a corporation, occupied the premises and carried on the business of blacksmithing and tool making as before, paying rent to the defendant as its landlord under the terms of the lease. It seems from the evidence in this case that about the 30th of March, 1901, the defendant gave plaintiff notice in writing as follows:

"B. Roth Tool Company, City.

Gentlemen:

Our lease with you requires us to give you six months' notice in order to terminate your lease. We therefore notify you that your present lease with us expires six months from this date as we are in need of the space you occupy to enlarge our business.

Please acknowledge receipt of this letter.

CHAMP SPRING COMPANY,
C. E. M. Champ, President."

This notice was served on Mr. Edward B. Roth, one of the members of the plaintiff company, and on receipt of it he saw the president of the defendant company who explained to Mr. Roth that the defendant company wanted the additional room in the building for their own purpose which was the reason for giving the notice. Following this notice, which was dated the 30th of March, 1901, the defendant served another notice upon the plaintiff, which is as follows:

"B. Roth Tool Company, Wm. Boeffer, Charles A. Roth and Edw. B. Roth, St. Louis.

You are hereby notified that the tenancy heretofore existing between you and the undersigned, of the property hereinafter described, will be terminated on the 15th day of September, 1901, at which time you are respectfully requested to remove from and surrender up to the undersigned the quiet and peaceable possession of premises in block No. 2275 of the city of St. Louis, State of Missouri, fronting one hundred and sixty-two

feet and ten and three-fourths inches on the north line of Chouteau avenue, by a depth of one hundred and thirty-seven feet, to the apartments now occupied by the Champ Spring Company, excepting from said description the property not occupied by you but occupied by Fred Ahrens as a blacksmith shop, and stables, boiler house and boiler occupied by the Champ Spring Company; said property occupied by you is further described as bounded east by property now or formerly of Joseph Schneider, south by Chouteau avenue, and west by the property now or formerly of Edenborne, or a line 212 feet 11 inches, more or less, east of the east line of 22d street; and upon which are buildings and improvements known as No. 2115 Chouteau avenue. And possession of said premises upon said 15th day of September, 1901, is now demanded of you.

CHAMP SPRING COMPANY,<br>
By C. E. M. Champ, President."

St. Louis, Mo., Aug. 13, 1901.

At the expiration of the thirty days mentioned in this last notice, defendant shut off the steam power, that being done either the sixteenth or the morning of the seventeenth of September, 1901, and it remained shut off until the 30th of September or the first of October, according to the testimony of the plaintiff, or according to the testimony of the defendant, until the 27th of September, 1901. Both parties, however, agree that one Sunday only intervened between the time of shutting off and turning on the power. On the 18th of September, 1901, this plaintiff instituted a suit in the circuit court of the city of St. Louis against this defendant, to restrain it from turning off the steam and power from the plant and that it be required to turn the same on and furnish plaintiff with steam and power as provided in the lease and that defendant be further restrained from interfering with plaintiff in the free use and occupation

of the property, this being the prayer in the petition for the injunction, which was filed, the fact of the lease and its terms and of the notice of termination and of the fact of shutting off of the power being set out in the petition. Upon the filing of this petition, the circuit judge to whom it was presented, entered up an order granting a temporary injunction, enjoining defendant from interfering with plaintiff in the free use and occupancy of the property described and ordering the defendant not to turn off and not to keep turned off the steam and power provided for in the contract of lease. Apparently under this order, which was dated the 27th of September, the power was turned on. This suit for injunction was finally heard and determined in the circuit court and a decree rendered therein on November 22, 1901. In this decree, the circuit court found and adjudged that it was provided in the lease that it could be terminated at any time after June 15, 1898, by either party giving six months' notice in writing to the other, and it was further found by the court that after June 15, 1898, "the plaintiff company, which was the successor of the lessees and so recognized by the defendant, remained in possession under this instrument, paying the monthly rent therein provided for, that on March 30, 1901, defendant gave notice reciting that their lease required six months' notice, that they thereby notified the plaintiff that the lease would expire six months from that date (March 30, 1901). On August 13, 1901, the defendant gave plaintiff notice to vacate on September 15, 1901, and on September 15, 1901, defendant shut off the steam power, whereupon the temporary injunction was granted, and the court doth find, as a matter of law that the plaintiff held as tenant under said lease, and under the provisions of the lease the same continued, until the six months' notice should be given, that the notice given August 13, 1901, terminating the tenancy September 15, 1901, did not have the effect of ter-

minating the same, but that the notice given March 30, 1901, did have the effect of terminating the lease September 30, 1901. That at the time of the granting of the temporary injunction plaintiff was entitled thereto, and to the relief sought, but that by reason of the termination of the lease under the notice of March 30, 1901, on September 30, 1901, the further continuance of the injunction would be improper and the costs of this proceeding shall be paid by the defendant." It was thereupon ordered by the court that the injunction theretofore granted September 27, 1901, be dissolved and the cause dismissed and plaintiff recover for the defendant its costs in its behalf expended.

In this suit last above referred to, this defendant (as defendant therein) filed an answer denying the allegations in the petition and as a further defense set up that the plaintiff occupied the premises in its petition described under a written lease with the defendant, the term of which expired June 15, 1898; "that after the expiration of said lease, on June 15, 1898, said plaintiff, with the consent of the said defendant, continued to occupy the said premises as a monthly tenant, paying rent therefor as such monthly tenant." The answer then avers that pursuant to the statute, it had, on the 14th of August, 1901, served a notice in writing on the plaintiff, terminating the tenancy theretofore existing between plaintiff and defendant on the 15th of September, and demanding possession of the premises on the 15th of September, and averring that notwithstanding the termination of the tenancy, plaintiff continues to hold possession. This answer was sworn to by Mr. Champ, he stating in his affidavit that he was president of the defendant company, and upon the filing of this answer, defendant filed a motion to dissolve the temporary injunction. With this answer and the motion before it, the circuit court entered up the order for a temporary injunction and on hearing the case on its merits, entered

up the final decree heretofore recited.    There was an appeal taken by the defendant from this decree to this court, where it was affirmed, the opinion of this court affirming it being reported in 93. Mo. App. 530.    On the 21st of November, 1901, the plaintiff commenced this present suit against the defendant.    Defendant filed a motion to strike out certain portions of the original petition which motion was sustained.    Plaintiff then filed an amended petition.    Defendant moved to strike out certain portions of this, and this motion was sustained. In May, 1903, plaintiff filed its second amended petition and defendant filed its motion to strike out certain parts of this second amended petition. That motion was sustained and plaintiff thereupon filed another and a third amended petition.    Defendant filed its motion to strike out parts of this third amended petition.    This motion was sustained.    Defendant thereupon filed its answer but subsequently withdrew it and filed a motion for judgment and for treble costs.    This motion was sustained and judgment of dismissal and for triple costs entered against the plaintiff.    Whereupon plaintiff brought the case to this court, where the action of the circuit court in dismissing plaintiff's case was reversed and the cause remanded for further proceedings in accordance with the opinion rendered.    See B. Roth Tool Co. v. Champ Spring Co., 122 Mo. App. 603.    Upon the case reaching the circuit court, defendant again moved for judgment of dismissal and for treble costs against the plaintiff.    This motion was overruled, the cause standing for disposition upon the third amended petition.    That petition is set out in 122 Mo. App. at pages 604, 605 and 606, and as it is the petition now before us, and on which the case was tried, we will not repeat it here.    Saving exception to the overruling of its motion in the circuit court, the defendant filed an amended answer to this amended petition, in which answer, after

146 App.—2

first denying each and every allegation in the petition contained or any knowledge or information thereof sufficient to form a belief, defendant sets up, "that if the alleged or claimed contract or lease dated March 15, 1897, has any force or effect, as between the plaintiff and the defendant herein, this defendant is not liable or answerable in damages to the plaintiff for the consequences of not furnishing steam power under the covenants of said contract of lease for the following reasons:" That under the lease, the lessees are to pay rent for the premises which included steam and power sufficient to run their plant six days in the week during the hours of and between 7 a. m. and 6 p. m. (except legal holidays) at the rate of $145 per month, and that "in the event of the party of the first part (defendant herein) from any cause whatsoever failing to furnish power or steam to operate the plant of the second party during the hours herein mentioned, they (Champ Spring Company) agree to allow them (Wm. Boeffer, Chas. A. and Edw. B. Roth) for same;" that under this clause, defendant had a right to elect whether or not it would furnish lessees the steam under the provisions of the lease or allow the lessees for the same, and that plaintiff herein occupied the premises from the 15th of September, 1901, until October 2, 1901, without paying rent therefor; that at the rate of the rent reserved under the lease for the use of the premises, the time for which the lessees of plaintiff herein occupied the said premises without paying rent therefor would aggregate about one-half of a month in time and would amount in dollars to $72.50; "that said amount was and is the reasonable value of the steam or power which the said defendant contracted to furnish the said lessees under the covenants of the said lease," and that defendant never sought to collect the amount from either the lessees or the plaintiff but elected to treat it as an allowance to the lessees or to the plaintiff, "if plaintiff could have or acquire any rights

thereto, which this defendant denies," as compensation for defendant's failure and refusal to furnish steam and power for the period. Further answering, defendant avers that plaintiff should not be allowed to maintain this suit for the reason that it could acquire no title to the lease or right to maintain an action for a breach of any of the covenants therein, because the instrument creates, after the expiration of the term named therein, to-wit: June 15, 1898, a tenancy at will between the lessees named in the lease and the defendant, and that any assignment of the lease after the expiration of the term expressed therein would defeat the tenancy at will, the act of assignment destroying the estate and rendering the lease and all covenants therein void and of no force or effect so far as affects the right of any assignee of the original lessees' tenancy at will in the premises.

A reply was interposed to this which, after a general denial of the second and third defenses set up in the answer, sets out the suit for injunction against the defendant by plaintiff, which has been heretofore referred to, and the reply pleads the decree rendered in that case by the circuit court and affirmed by this court, as an adjudication between the same parties of the question of the construction of the lease, and the succession of plaintiff here to the rights of the lessees named therein, and that it was construed by this and the circuit court in that case in accordance with plaintiff's petition in that case, and that it was therein decreed that plaintiff was entitled to the peaceable possession of the premises down to and including the 30th of September, 1901, and that by that decree all the facts alleged in the second and third defenses plead in defendant's answer in this present suit have become *res adjudicata*.

Prior to the case being called for trial in the circuit court, the defendant moved for a reference on the ground that in order to ascertain the items of the alleged or

claimed loss involved in the turning off of the steam from the steam hammers and loss of profits in operating the small hammers, it would be necessary to take an accounting for the information of the court before a judgment could be entered; that sundry items of account must necessarily be taken which could not be carried by the jury into the jury room and it would be necessary to go into a detailed statement of all contracts which plaintiff had with divers and sundry persons and to figure out upon which contract or contracts loss had been sustained and how much loss had been sustained on each contract; that the jury could not carry in their minds the items of profit and loss; that in depositions which had been taken of two of the members of the plaintiff corporation, neither of them could remember the account or the items of it, and that if plaintiff is allowed to show details of the claimed damages going to make up the aggregate of the specifications of loss, a question of fact other than upon the pleadings, will arise, which, under the statute, is a proper subject for reference, and that under such showing, the trial of the issues will involve a long examination of an account upon the part of the plaintiff. This motion was overruled and the cause proceeded to trial before the court and a jury.

At the trial testimony was introduced by the several parties covering the matters above referred to, covering the lease, the occupancy of the premises by the plaintiff, the recognition of its tenancy by the defendant, payment of rent by the plaintiff and acceptance of it by defendant for a period of about two years. When the proof of payment of rent was first offered, defendant objected to it on the ground that there was no averment in the petition of an assignment of a lease to plaintiff. The court overruled the objection for the stated reason that this was a matter which should have been and was not raised on the pleadings. The notices of termination of the lease, the pleadings and various orders and the

decree in the injunction suit were introduced, and there was testimony as to the character and extent of trade and business carried on by plaintiff on the premises, and the extent of interruption of its business. Plaintiff's books of entry and account were produced and apparently in court during the trial, which extended over two or three days, and while they seem to have been tendered to the defendant's counsel during the trial, and at one time were offered in evidence, they were withdrawn, not being put in evidence by either party. A witness for plaintiff was permitted to testify from sheets or schedules that he had prepared or that had been prepared under his direction, and testified to as having been taken from the books, these showing the total receipts and expenditures by months for the year 1901. This summary, as printed in the abstract is dated October 19, 1908. Evidently this is a typographical error, as an examination of the merchandise account there tabulated shows that it corresponds with the merchandise account of purchases for the same months of the year 1901, and as this account purports to give output, pay roll, merchandise and profits for the months of October, November and December, 1908, and the trial was had between the 18th and 20th of October, 1908, obviously the date in the printed statement is an error, and we treat it on the assumption that this exhibit "B," as it is called, is for the year 1901, and not 1908. According to this statement, the difference between the pay roll and the merchandise purchased and the value of the output in 1901, for the month of January was $2915.85; for February, $402.31; for March, $460.32; for April, $869.18; for May, $662.44; for June, $530.32; for July, $1602.77; for August, $2768.85; for September, $365.42, an average net profit per month for the twelve months of $1102.86.

There was testimony introduced tending to show that when the notice of the termination of the tenancy

was given, there were heated words exchanged between the president of defendant and an officer of plaintiff as to the rights of their respective companies. This evidence was introduced, as claimed by counsel on each side, as relevant to the right to recover punitive damages. It is sufficient now to say of this testimony that it was, as is usual in such cases, contradictory, and we do not consider it necessary to set it out in detail.

After the evidence was all introduced, defendant asked for an instruction of nonsuit which the court refused to give, defendant excepting. This same instruction had been asked at the end of the plaintiff's evidence in chief and refused and exception saved. At the instance of plaintiff the court gave three instructions and the usual instruction as to the number of jurors necessary to concur in a verdict. By the first instruction the jury were told that if they found and believed from all the evidence in the case that the defendant turned off the steam and refused to furnish steam to the plaintiff during the month of September prior to and including the 30th of September, 1901, save and excepting legal holidays within that period, and that as a direct result of such action, "plaintiff suffered a loss of profits in its business by reason of being deprived of the use of said steam in the operation of any large or small steam hammers or lathes, or other machinery, which were operated by plaintiff by means of said steam in the conduct of its business upon the leased premises, then plaintiff is entitled to recover such a sum of money as you believe from all the evidence in the case will adequately compensate it for any such loss of profits; and in connection with this you are instructed that plaintiff admits that it did not pay rent from the 15th to the 30th of September, which defendant is, therefore, entitled to set off against such sum; therefore, in making up your verdict, if you find for the plaintiff you shall deduct from any loss of profit that you believe that it has suffered, as above stated,

the sum of seventy-two dollars and fifty cents ($72.50), which is the amount of rent unpaid which defendant would be entitled to set off in this case."

The second instruction, given at the instance of plaintiff, told the jury that if they found plaintiff entitled to compensatory damage, as to which they had been instructed, the jury might, if it so wished, also assess a sum for punitive or exemplary damages, "if you find and believe from all the evidence in the case that defendant acted maliciously," this amount not to exceed the $3000 asked in the petition and to be stated separately in their verdict.

The third instruction given at the instance of plaintiff, declared that an act is malicious, in the sense in which that word is used in the former instruction, if it is done intentionally "and either for the purpose of doing injury or wantonly and without regard for the natural consequence of the act, when the natural consequence is to occasion an injury, and that malice may be inferred from the nature of the act itself or from all the circumstances under which it is committed, when the same is done without legal excuse or justification."

The jury returned a verdict for plaintiff for $1216, less $72.50, net, $1143.50, and assessed punitive damages at the sum of $808.50, and judgment followed. Defendant in due time filed a motion for new trial, accompanied by an affidavit in support of it, the motion for new trial containing various allegations as to the adverse rulings by the court and remarks by the court during the progress of the trial. This was overruled, and defendant saving exception is here on appeal.

REYNOLDS, P. J. (after stating the facts).—Counsel have made twenty-three assignments of error, which assignments they have discussed under twenty-four distinct heads. Grouping these, they may be said to cover eleven propositions. The first covers the refusal

of the trial court to dismiss plaintiff's case, defendant claiming that as parts of three amended petitions had been stricken out, plaintiff was out of court, and that the former decision of this court on this point is in conflict with a later decision of the Supreme Court. The second, being points three, four and five, is devoted to an argument of the proposition, that the lease in question created a tenancy at will and that the assignment of the lease by the lessees to plaintiff destroyed the estate created by the lease; that while a tenancy at will or an estate at will may be placed in the class of estates for years, that is so only for the purpose of notice; that it still remains a tenancy at will, and that the tenancy at will in this case ceased by an assignment by the lessee to the plaintiff, and that while the covenant to furnish steam might run with the land, it could not inure to the present plaintiff, even if an assignment had been shown, because of the destruction of the term and interest by the assignment. The third proposition is, that there is no breach of the contract relied on shown. The fourth proposition, covering the seventh and eighth points, is addressed to the plea of *res judicata,* it being argued that the law of the case is limited to the points expressly decided, and that the judgment pleaded in estoppel in this case does not expressly cover the points that the assignment of a lease creating a tenancy at will defeats the lease, or that the covenant to furnish steam was satisfied by the alternative provision of the lease, it being further argued, that if these points are covered by inference by the former decision and if that decision establishes a different proposition of law, the decision ought to be overruled. The fifth group, embracing points nine, ten and fourteen, goes to the measure of damages, it being claimed that such prospective profits can only be recovered in an action for breach of contract as it could reasonably have been presumed were in contemplation of the parties when they made the contract,

and that the alternative provision of the contract clearly negatives the idea that the parties could have intended that prospective profits could be recovered; on the contrary, the lease carries the idea that the lessor could allow the the lessee for the loss of steam while it was shut off, and that the allegation in the petition, on which the case was tried is that the loss of $1200 alleged to have been sustained by failure to furnish steam for two large hammers, was alleged to be not the direct loss of the use of the hammers, but the indirect loss of profits by reason of not being able to complete certain contracts. It is claimed that this is too general to tender an issue of fact, and that the loss of profits are special damages which must be stated in the petition with reasonable certainty. The sixth group, covering points eleven, twelve and thirteen, go to an attack on the proof offered, it being argued that the entries in the books from which the statements were testified to by witness to have been compiled, were entries *res inter alios acta* and not competent against this defendant and that the synoptical statement used in evidence by a witness is a mere conclusion which the witness was allowed to make and which was the very conclusion that the jury were required to find. The seventh proposition, embracing points fifteen, sixteen and seventeen, attacks the award of punitive damages on the ground that there is no evidence, or no circumstances in evidence either of malice or gross negligence, or that the act complained of was wanton or malicious. The ninth group, covering points eighteen and nineteen, relates to errors alleged to have been committed at the trial, particularly by the trial judge in asking leading questions and commenting upon the testimony, it being further claimed that the remarks of the court in the presence of the jury, in commenting on the conduct of defendant's counsel, were prejudicial to defendant. The tenth group, embracing points twenty, twenty-one and twenty-four, cover the

proposition that the action being for breach of a cove-
nant of the lease, and not trespass nor an action *ex
delicto,* the measure of damage is the difference in value
of the premises with the steam furnished and their
value with steam not furnished, and does not cover
speculative profits, as in an action in tort, and that
even under the instructions of the court as to the meas-
ure of damage, the damages awarded by the jury are
unsupported by the testimony and are excessive. The
tenth proposition, covered by the twenty-second point,
is on the alleged error of the court in refusing to grant
a reference of the cause as demanded by defendant;
and the final or eleventh proposition is embraced by the
twenty-third point, that there is no averment in the
petition of the assignment of the lessee's interest in the
lease to plaintiff; that no assignment was produced
or introduced in evidence and mere occupancy will not
be sufficient to constitute plaintiff the assignee of the
lease in question.

We shall not undertake to follow all of these propo-
sitions in detail; in fairness to counsel for the defend-
ant, who have zealously and ably compiled authorities
and argued out the propositions which they rely upon,
we give them the benefit of placing on record the posi-
tions which they have advanced and on which they found
their claim for a reversal of the judgment of the circuit
court in this case.

The first point of contention, and one very stren-
ously argued, is that this court, in the decision of this
case when last before it, that decision reported under
the same title of B. Roth Tool Co. v. Champ Spring
Co., in 122 Mo. App. 603, has gone contrary to the de-
cision of the Supreme Court in the case of Sidway v.
Land & Live Stock Co., 197 Mo. 359, it being claimed
that the Sidway decision had not then been promul-
gated. It is further claimed that the decision of the
Supreme Court in the Sidway case overrules Munford

v. Keet, 154 Mo. 36, which this court had followed in its former decision. We are obliged to differ with counsel on this contention. The Sidway case announces the law as it is in cases where the whole petition has been adjudged insufficient; the Munford case and our decision in the 122 Mo. App., were on cases in which parts only of the pleading were stricken out, enough remaining to state a cause of action. That decision, too, is in this very same case at bar. Even if we had decided that case incorrectly, that decision, on this point, is the law of this case. While we might decline to apply it in other cases between other parties, as far as these parties and this case is concerned, we cannot do so; it must stand as the law of this case. We will treat this matter of *res judicata* more fully when we come to another proposition. But that we may not be misunderstood, we add, that not resting upon the proposition of *res judicata,* we hold that the former decision of this court on this point is correct, is a proper statement of the law, and in no manner in conflict with or overruled by the decision of the Supreme Court in the Sidway case.

Notwithstanding the very able and exhaustive brief and argument of the learned and industrious counsel for the defendant as to the character of the lease, whether it is a monthly tenancy or one at will or for years or as to its assignability, and as to whether the plaintiff is entitled to sue on the covenants thereof, that is as to whether, lacking a written assignment, plaintiff is entitled to an action for the breach of any of the covenants in the lease, while recognizing the profound learning displayed by those counsel, we are compelled to hold that all of their argument on these matters is futile in this case. This is so for the very sufficient reason that, in our view of the law and on careful consideration of the decision of this court in the case of B. Roth Tool Company v. Champ Spring Co., 93 Mo.

App. 530, every one of these propositions, now relied upon by counsel, is covered and that so completely as to settle, on these propositions, not only the fact but the law as applicable to this case. In other words, it is our conclusion that the doctrine of *res judicata*, applied to this case, precludes this court from further consideration of these questions between these parties. In order that there may be no mistake about our ruling on this matter and to put it in the broadest possible light, as we understand the doctrine of *res judicata*, as interpreted by the great weight of American authority and by our own court, the question as to the character of the lease and the term and the tenancy thereby created, and as to the fact of plaintiff's succession to the rights of the lessees named, and as to the rights of plaintiff as such successor to enjoy the use of the steam to the end of the six months named in the notice, and the unlawfulness of the act of the defendant in turning off steam and power and keeping it turned off for from ten to fifteen days and until ordered to turn it on again under the mandatory injunction which was issued in the case before referred to, and that in so doing it rendered itself liable in damages to plaintiff, whether the conclusion arrived at by this court on these points was right in law or not, or whether its conclusion upon the facts was correct or not, that case, on all these propositions, between these parties, is *res judicata*.

Referring to the text-writers, one of the most universally accepted of them, Black, in his work on the law of judgments (2 Ed.), p. 764, sec. 504, states that there are two main rules which govern the subject of estoppel by judgment which may be deduced from the general result of all the authorities. The first is, that "A point which was actually and directly in issue in a former suit, and was there judicially passed upon and determined by a domestic court of competent jurisdiction, cannot be again drawn in question in any future action between the same parties or their privies, whether the

causes of action in the two suits be identical or different." And the second rule is, that "A judgment rendered by a court of competent jurisdiction, on the merits, is a bar to any future suit, between the same parties or their privies, upon the same cause of action, so long as it remains unreversed." Or, to put it differently, "The doctrine of *res judicata* is plain and intelligible, and amounts simply to this, that a cause of action once finally determined, without appeal, between the parties, on the merits, by a competent tribunal, cannot afterwards be litigated by new proceedings either before the same or any other tribunal." Treating further of the same matter, at section 508, the text-writer states, that the rule as to *res judicata* "has no reference to the form or the object of the litigation in which the particular fact is determined which is thenceforth to be deemed established as between the parties to the dispute. The form or object of the prior litigation does not alter the conclusive effect of the judgment or decision." "It is not essential," says this writer at section 514, "to the operation of a judgment or decree as an estoppel, that it should be legally right; it is enough if a court having jurisdiction has decided the point in issue. . . . Hence when a judgment of a court of general jurisdiction is offered as evidence in a collateral suit, and is pertinent to the issues in such collateral suit, the judgment, however erroneous, is admissible, and is conclusive upon the point to which it speaks, unless it is made affirmatively to appear that the court which rendered it had no jurisdiction of parties or subject-matter." At section 518, the same author states the law to be that, "In the application of the principle of *res judicata*, there is no difference between courts of law and courts of equity; when an issue of fact or of law has been adjudicated upon the merits in either tribunal, it cannot be again litigated in the other." A wealth of authority in support of the proposition laid down by the text-writer will be found in the notes to

the sections referred to. To the same effect is Bigelow on Estoppel (5 Ed.), chapter 2.

In the case of Beloit v. Morgan, 7 Wall. (U. S.) 619, Mr. Justice SWAYNE (l. c. 622), after referring to the fact that the court in the case under consideration had full jurisdiction of the parties and the subject, says: "Under such circumstances, a judgment is conclusive, not only as to the *res* of that case, but as to all further litigation between the same parties touching the same subject-matter, though the *res* itself may be different."

Our own Supreme Court, in Chouteau v. Gibson, 76 Mo. 38, in a very thorough examination and discussion of the question of *res judicata*, quotes with approval at page 47, Cooley on Constitutional Limitations, 47, that "A proposition assumed or decided by the court to be true, and which must be so assumed or decided in order to establish another proposition which expresses the conclusion of the court, is as effectually passed upon and settled in that court as the very matter directly decided." At page 49, Judge NORTON, who delivered the opinion of our Supreme Court, in the Chouteau v. Gibson case, says: "In passing upon the plea of *res judicata* the question is not whether the court decided the point involved right or wrong, but the question is, did it decide, and is the decision final?" Further along in the same opinion, in distinguishing the doctrine of *stare decisis* and *res judicata,* and referring to instances in which the court had overruled propositions in one case that had been decided in another, Judge NORTON says (l. c. 51): "But while this may be, and is often done, the right of a party to reagitate and sue again upon the same cause of action adjudged in a case subsequently overruled in another case between other parties or the same parties upon another cause of action, is concluded and forever gone." Further along on the same page, Judge NORTON, speaking for the Supreme Court and quoting Bigelow on Estoppel, says: "It

seems hardly necessary to state that a judgment of a court of last resort cannot be collaterally attacked in that or any other court; but the point has been raised and so ruled."

The law as announced on this subject in the case of Chouteau v. Gibson, supra, has never been disturbed or questioned by our Supreme Court, as see Exposition Driving Park v. Kansas City, 174 Mo. 425; its last affirmance being in the case of Reynolds v. Hood, 209 Mo. 611, l. c. 620. The Kansas City Court of Appeals, in a discussion of the doctrine, in the case of Pond v. Huling, 125 Mo. App. 474, commencing at page 480, has followed the ruling there announced, collecting in addition to Chouteau v. Gibson, supra, many cases in support of it.

These authorities are conclusive on the proposition that the character of this lease and the term created by it and the right of the plaintiff in this case to stand upon the terms and covenants and conditions therein contained has been finally and forever settled as between these parties and their privies, and that plaintiff has a right of action for violation of the covenant to furnish steam power is also settled. Apart from the doctrine of *res judicata* and its application to this case, a careful and laborious scrutiny of the opinion of this court, as reported in 93 Mo. App. 530, satisfies us that that opinion is right in law and on the facts.

This leaves only three question to be disposed of which are not covered by the former decision of this court. The first relates to the refusal of a reference, the second relates to alleged errors at the trial in the admission and exclusion of testimony and the action of the trial judge, and the third, speaking generally and comprehensively, relates to the measure and award of damages. Taking these up in their order, it is to be observed that it has been many times decided by our courts, that in our State, reference is a matter of purely statutory right, and unless the case in which it is asked

or in which it is granted, is a case within the statute, the court has no power whatever, of its own motion, to grant a reference, the parties not consenting, as here, when plaintiff not only did not consent to, but resisted a reference. Section 698, Revised Statutes 1899, contains the sole grant of power for an involuntary reference. This case does not come within the statute. It is not an action on account or one that required the examination of a long account on either side. The ascertainment of the amount of damages or arriving at facts from which damages were to be ascertained, may have involved the going into a question of profit and loss, receipts and expenditures, but in no sense was an account to be taken, in the sense in which those terms are used in the statute. Nor do we think that it was a case where the taking of an account was necessary for the information of the court before judgment or for carrying a judgment or order into effect. This same question was presented here, as in nearly all actions for damages, the question of earnings that may have involved statements of receipts and expenditures, but not the taking of an account within the meaning of the statute. Nor does this fall within the third clause of the section, in that it presents a case where a question of fact other than upon the pleadings arose or might arise, upon motion or otherwise, at any stage of the proceedings. Reading the testimony in the case by which the matter of profits and losses was developed, we cannot say that it presented any questions beyond the scope of intelligent comprehension by any ordinary jury.

We have gone over with very great care the whole of the printed abstract in this case, covering 203 pages, of which all but about thirty-seven is devoted entirely to the testimony in the case, the remaining pages being taken up with the record proper and with the term bills of exception, relating to settling the pleadings, and with the instructions, motions for new trial, etc., and while it shows that the case was a hotly contested one, the trial

lasting two or three days, and that there were numerous tilts between counsel and even between them and the court, we cannot and do not think that any remarks that were made by the court and to which exception was taken, prejudiced or even had a tendency to prejudice the jury against the defendant in the case.

Concerning the admission of evidence, the principal and most strenuous objection made was to admitting in evidence the schedule or synopsis of the book entries, showing receipts and expenditures of the defendant company. This statement was prepared by the witness who testified from it; the books, from which he swore that he had prepared it, were identified as the books of account of the plaintiff company; they were produced in court, although not offered in evidence, or, to be more accurate, offered in evidence and then on the suggestion of the court that that would involve putting them in the transcript, withdrawn from evidence, the court suggesting that such parts of them as parties desired might be put in evidence, but neither party availing themselves of this offer, the witness, with the schedule or synopsis in his hand, which he had himself prepared, was permitted to read from that a statement of the account as shown by these books. This was the only practicable way of handling this matter, short of introducing page after page of the books themselves, by which the testimony could be presented either to the jury or to this court on appeal. We do not understand that the correctness of the schedule is challenged, the first point of the challenge appearing to be that defendant's counsel had no time to examine and compare it with the books. We do not discover, in going over the evidence, that they made any such demand. The objection also goes to this schedule as an incompetent and improper mode of proving accounts. This objection was overruled and the schedule introduced in evidence, after having been verified by the witness who had himself prepared it.

146 App.—3

Going further, counsel contend that the books themselves, kept by plaintiff in course of its business, with which defendant had no connection, would not have been evidence against defendant. As to this last point, it is disposed of adversely to the contention of defendant by the decision in The Anchor Milling Co. v. Walsh, 108 Mo. 277. We do not think any error was committed in allowing the plaintiff to introduce the schedule prepared from the books. It is true, the jury might have, with the books before them, ascertained the facts and verified the items. But this schedule being sworn to as correctly taken from the books by one who had shown he was competent to prepare it, whether a bookkeeper or not, was competent. Certainly we cannot hold its admission reversible error.

The third proposition as to the measure of damages is divisible into several heads. The first proposition and the one at the root of the right to damages and the measure of damages is raised on the following words in the lease: "In the event of the party of the first part from any cause whatever failing to furnish power or steam to operate the plant of the party of the second part during the hours herein mentioned, they agree to allow them for the same." It is argued by counsel for defendant that the defendant met the obligation of this provision when it offered to deduct from or allow to plaintiff the rent for the time during which the steam or power was shut off, that amount, it appearing, being $72.50. The position taken by defendant's counsel assumes that it was with defendant to determine what was to be allowed for failure to furnish power or steam. We cannot agree to this. No language of the lease places that within the sole power of the defendant. This is not a case of assessed damages, provided for by the lease. Nor can it be said that the covenant to furnish the power was not a real covenant, running with the property. This was decided in the case in 93 Mo. App., at p. 542, it being held there that

this plaintiff could sue for a breach thereof. What damages were to be awarded for the breach were not and are not covered by this provision and we are of the opinion that the rule laid down by the trial court was correct. There was evidence warranting the jury to fix the actual damages at $1216. By the schedule of receipts and expenditures, while the average net monthly receipts for the year 1901 were placed at $1102.86, it will be seen that for August of that year they were $2768.85, for October $1108.72, and average of $1938.78 per month for the two months. The account for September, during half of which month power was shut off, was $365.07, showing a falling off in receipts for the lost time of that month of $1573.77. In view of this testimony, we cannot say that the amount of the verdict for actual damages was excessive or unwarranted. There was sufficient evidence in the case as to the bad feeling of the defendant's officers and as to the circumstances under which the power was shut off, to warrant an instruction on punitive damages. When that is so, and correct instructions are given, and the jury keep within the instructions as to the amount, we cannot interfere, unless it clearly appears that the amount awarded shows passion or prejudice on the part of the jury. We cannot say that of this part of the verdict. On consideration of the case, it is our conclusion that the judgment of the circuit court should be affirmed and it is accordingly so ordered. *Goode, J.,* and *Nortoni, J.,* concurring.