JOHN HARTSON COOPER, Trustee, v. WARD H. COOK and LYDIA SMITH-MEYER, Appellants, FLORENCE COOK BRANINE and HAROLD HALE BRANINE, Respondents.—148 S. W. (2d) 512.

Division Two, March 12, 1941.

*Gossett, Ellis, Dietrich & Tyler* for appellants.

530

*C. W. Evans* for respondent.

COOLEY, C.—This is a suit in equity by which plaintiff, trustee, sought reimbursement for payments made by him and to have same charged in his favor and established as a lien against the interests of defendants Cook and Smithmeyer in certain real estate. Plaintiff prevailed below and said defendants Cook and Smithmeyer alone appealed.

The parties claim title through the will of Kate S. Cook, who died, testate, October 11, 1928, seized in fee of the real estate here involved, described as "All of lots seven (7) and eight (8), Block two (2) in Springfield Place (except the south 25 feet thereof, taken for boulevard) an addition in Kansas City, Jackson County, Missouri," and

some other real estate not here involved. The tract of ground in question has a frontage of approximately 80 feet on Gillham Road and a depth of 108 feet and is improved with a two story garage and automobile sales building. On October 31, 1927, Kate S. Cook executed to one Theis her note for $18,000, due in five years, and to secure same executed her deed of trust on this property. She owed that debt at her death, said real estate being then still subject to the deed of trust.

Mrs. Cook left surviving her as her sole heirs four children, viz:, Hale S. Cook, appellants Ward H. Cook and Lydia Smithmeyer, and Florence Cook Branine. By her will she gave to each of her three children, Hale, Ward and Lydia, absolutely, an undivided one-fourth share of all her property, real and personal. The other undivided one-fourth share she gave to the Fidelity National Bank & Trust Company of Kansas City and Hale S. Cook, as trustees for Florence Branine and her issue. Florence then had one child, the defendant Harold Hale Branine, born October 13, 1921. By the terms of the will the trustees are to pay the net income from the property so held in trust to Florence during her life. Upon her death "the Trustees shall hold said trust property in trust for her issue, in equal shares," paying out of income such sums as may be necessary for the maintenance, education, etc., of such issue, "and upon the oldest of such issue attaining the age of thirty (30) years, then this trust shall cease" and the trustees shall convey and deliver all property "then in the trust estate" to such issue, in equal shares, absolutely. If Florence dies leaving no issue surviving the trust is to cease at her death and provision is made for distribution thereupon among the other children of the testatrix or their issue. "This trust shall terminate with like distribution as last aforesaid if all the issue of my daughter, Florence, surviving her shall die before the oldest attains the age of thirty years," but if any of such issue should die leaving children surviving such children are to take the trust property. The will gives the trustees broad discretionary powers in the handling of the trust property, as for example, to sell, pledge, mortgage, lease, invest and reinvest all or any of the trust estate and "the trustees may retain as part of the trust estate any of the property owned by me at the time of my death and coming into this trust, if they deem such action advisable . . ." but nothing in the will to be construed as limiting the "power and discretion" of the trustees to "sell, convey, mortgage, transfer or otherwise" dispose of any of the property coming to the trust as in their judgment might at any time be advisable. We have thus epitomized the provisions of the will creating the trust because of certain contentions made herein which will be adverted to hereinafter.

In course of time Hale S. Cook resigned as trustee and W. O. Thomas was substituted as co-trustee with the Fidelity National

Bank & Trust Company. Later said Bank & Trust Company resigned as trustee and Thomas was appointed sole trustee. Subsequently he also resigned and plaintiff Cooper was duly appointed as sole trustee and was so acting when this suit was brought.

The $18,000 note of Kate S. Cook was transferred to a bank of Lawrence, Kansas, which in turn transferred it to F. H. Smithmeyer, father-in-law of appellant Lydia, who owned it when payment was made, as hereinafter to be related. In the course of these transfers certain extensions of time for payment of the $18,000 note were made, but upon condition that the principal should be reduced. This was done and pursuant to orders of court $2,400 was paid on the principal, reducing the debt to $15,600. One-fourth of the amount so paid on principal, together with one-fourth of interest accruing from time to time, was paid by the then acting trustee, out of the trust estate. In about late January, 1937, F. H. Smithmeyer, then holder of said $18,000 note and deed of trust, was demanding payment and threatening foreclosure. He did advertise the property for sale under the deed of trust, the sale being advertised for February 15, 1937. Cooper, as trustee, called upon appellants Lydia Smithmeyer and Ward H. Cook to contribute their proportionate shares of the sum necessary to pay off the incumbrance and prevent foreclosure. They refused. Cooper, as trustee, was ready and able to pay his one-fourth. He borrowed the money to pay the whole debt, then amounting, with principal and interest and costs of the foreclosure proceeding, to $16,103.03, and tendered it to Smithmeyer, requesting assignment of the note, which Smithmeyer refused. Cooper then, on February 13, 1937, two days before the advertised date of sale, paid to said F. H. Smithmeyer said full amount of the note, principal and interest, including costs of the advertisement of sale, which Smithmeyer, perforce, accepted and the note was by the recorder of deeds conceled and the deed of trust was released of record. In the meantime appellant Lydia had acquired all interest in the property of her brother, Hale, through foreclosure of a deed of trust which he had given on his one-fourth interest and also by a warranty deed which he had given to her, so that at the time of the threatened foreclosure she owned in fee an undivided one-half of the property and her brother, appellant Ward Cook, owned his original one-fourth interest. Cooper paid his one-fourth share out of trust funds and made ineffectual efforts to get appellants, Lydia and Ward, to contribute their respective shares, hence this suit for contribution and a lien on their shares in the property. The pleadings are long and sufficiently present the issues to be determined. Plaintiff pleaded at length the facts we have referred to and that he had made the payment as trustee and co-owner in common of the property for the protection of his interest as trustee and for the protection of all the owners and prayed for subrogation and that the interests of the other owners be

charged respectively with liens, enforceable by sale if necessary, for their respective shares of the money so paid. Florence and her son, Harold, answered, the latter by guardian *ad litem*, admitting in substance the allegations of the petition and asking the court to grant plaintiff the relief therein prayed. ·Appellants filed first a general denial and later, on the day of the trial, an amended answer and cross-petition. By their amended answer they denied that plaintiff owned any interest in the real estate in question; averred that the interest claimed by him was by virtue of the will of Kate S. Cook and that the trust thereby attempted to be created was void as being violative of the rule against· perpetuities, resulting, they claimed, that said Kate S. Cook died intestate as to that one-fourth interest in the property which therefore descended to her heirs at law, and that whatever payments had been made by plaintiff on account of the deed of trust and debt secured thereby had been made as a volunteer and a stranger to the title, wherefore he was not entitled to reimbursement. By their cross-petition they asked partition of the premises. Plaintiff filed reply alleging estoppel and laches on the part of appellants, precluding them from denying the validity of the trust, also that its validity was *res adjudicata* by reason of certain prior litigation, and further that in any event, even if the trust should be held invalid he had made the payments as trustee in good faith, in the *bona fide* belief that the trust was valid and that he, as trustee, was a co-owner of the property, and had made them for protection of the trust and of the interests of all the owners. The reply sufficiently pleaded the facts constituting the claimed estoppel and laches and plaintiff's good faith in making the payments. It also denied that the trust was void as contravening the rule against perpetuities.

The trial court decreed that plaintiff was entitled to contribution from appellants and adjudged a lien against their respective shares in the real estate in question for their respective portions of the sum paid by plaintiff, $16,003.03, one-half thereof against the share owned by appellant Lydia and one-fourth thereof against the share of appellant Ward, and further decreed that if such sums were not paid the respective shares of appellants should be sold, separately, under special executions, to pay the same. The court refused, or at least failed, to determine the question of ownership of the one-fourth interest claimed by respondent, which was specifically prayed by appellants' answer and cross-bill, and refused to decree partition, holding, without stating reasons therefor, that appellants were not entitled to partition. If further facts need be stated in order to elucidate points to be determined they will be given in the course of our opinion.

■ Respondent claims that the trust created by the will does not contravene the rule against perpetuities because, he says, that properly construed, the reference in the will to the termination of

the trust when "the oldest" of Florence's issue should attain the age of thirty years meant her son, Harold, who of course would be the oldest of such issue if he survived to such age, and if he so survived the trust would not violate the rule, since it would not extend beyond a life or lives in being when the trust was created. In our opinion it is not necessary to determine the interesting question thus presented because we believe appellants are conclusively estopped to urge the now claimed invalidity of the trust—which makes it necessary to state some further facts:—

When the will was probated the first named trustees qualified and took charge of the trust estate. Thereafter they and their duly appointed and qualified successors administered it according to the terms of the will, receiving and disbursing the income as therein directed. They, together with the other co-owners of the property in question, executed leases on said property, and received their proportionate one-fourth of the rentals. By appropriate orders of court they disposed of certain trust property—not the interest in this property now in question—to raise the money to pay and did pay the one-fourth of the $2,400 paid to reduce the principal of the $18,000 note to $15,600 when that reduction became necessary in order to obtain extension of time and prevent foreclosure. By various court proceedings, not deemed necessary to here set out in detail, these appellants, together with all persons interested in the property, recognized the trustees as owners of an undivided one-fourth interest in said property, and the trustees acted, and justifiedly, in the belief that they were such co-owners. In about 1933 Hale S. Cook (then co-trustee) had filed in the Circuit Court of Jackson County a suit to set aside certain deeds which he had previously made to Florence Branine (now defendant herein), purporting to convey, with other property, the property now here in question. He prevailed in that suit. It is said in the record of the trial before us that said suit was still "undetermined," Florence having appealed without bond and the case not yet then having been determined in this court. It has since been determined here, the judgment below being affirmed. [See Cook v. Branine, 341 Mo. 273, 107 S. W. (2d) 28.] In and by that judgment it was adjudged, among other things, that the above-mentioned one-fourth interest in the property in question was owned and held by Hale S. Cook as co-trustee with said Bank & Trust Company for Florence and her issue. Appellants herein were not parties to that suit and therefore were, doubtless, not legally bound by the judgment therein. They must have known of it. But without holding that they were legally bound thereby, there is more to be said.

In April, 1934, the Fidelity National Bank & Trust Company, then co-trustee, filed a suit in the Jackson County Circuit Court, asking directions as to the management and administration of the trust. Hale S. Cook, as co-trustee, was named as a defendant, as were

also all persons who were or could be interested in the property. Hale S. Cook was sued both in his fiduciary capacity and individually. In the petition in that suit the plaintiff, trustee alleged fully and in detail its claimed ownership as co-trustee under the will of Kate S. Cook of a one-fourth interest of the property here involved, and, *inter alia*, asked directions of the court as to the management and administration of the trust. Beyond question the petition in that case called upon the court to determine the rights and duties of the petitioner in the administration of the trust created by the will and its *status* as owner, in the capacity of trustee, of the one-fourth interest involved. As we have intimated all persons interested or who could be interested in the property were made parties. Hale S. Cook, who was sued as co-trustee and also individually, answered, admitting all allegations of the petition except one to the effect that he had previously resigned as trustee. These appellants (defendants in that suit), also filed answer therein, in which they expressly admitted the ownership by the trustees of said undivided one-fourth of said property and expressly joined with the then plaintiff trustee in a specific request to the court to take jurisdiction of the trust property, of the trust created by the will and to direct the trustees as to the proper management of the trust. The court so decreed, holding in substance and effect that the trustees, in their fiduciary capacity, owned said undivided one-fourth share of the property here involved and directing them as to the management thereof. Thereafter and until this suit came along such instructions were faithfully carried out by the then trustees and their successors in trust, with the full knowledge and acquiescence of appellants as well as all other parties interested in the property in question. It is said herein that the judgment in said last mentioned suit has not become final, that the cause is still pending, and therefore the judgment is not "*res adjudicata.*" Plaintiff urges it as *res adjudicata.*

The Fidelity National Bank & Trust Company, as one of the trustees under the will of Kate S. Cook, filed said suit asking the court to take jurisdiction and direct it as to the management of the trust on April 25, 1934. Pursuant to such request, expressly joined in by their answers filed in said cause by these appellants as well as all others interested, the court did take jurisdiction and thereafter, from term to term, made and entered orders in said cause, the court retaining jurisdiction "for further orders" therein.

In the course of such "further orders" the trustees were authorized to and did sell certain properties held by them as trustees. They were authorized to and did pay, out of trust funds, one-fourth of certain taxes assessed against the property as a whole. Hale S. Cook resigned as trustee and Thomas was appointed co-trustee in his stead. The Bank & Trust Company resigned as trustee and Thomas was appointed sole trustee. Thomas resigned and Cooper was appointed

sole trustee. The court accepted the resignations of those resigning, requiring them to file settlements, which were examined and approved by the court. The settlements show the trustees were holding the one-fourth interest in the real estate now in question as trustees under the will. From time to time net income from said one-fourth was ordered paid to the life beneficiary, Florence. All this was done, as we have said, not only with the knowledge and acquiescence of these appellants but pursuant to their express request, by their pleading, as above pointed out. At no time, from the probating of Mrs. Cook's will until they filed their amended answer on the day the trial of the instant case began, did appellants—or anyone else—so far as appears from the record before us, raise any question as to the validity of the trust.

We are inclined to think the question of the validity of the trust is *res adjudicata*. In 34 C. J., p. 923, sec. 1331, we read:

"Matters which follow by necessary and inevitable inference from the judgment—findings or determinations of the court in relation to the subject matter of the suit which are necessarily implied from its final decision, as being determinations which it must have made in order to justify the judgment as rendered—are equally covered by the estoppel as if they were specifically found in so many words, unless questions are reserved for further consideration or lease given by the court to take further proceedings, in which case the unadjudicated matters are left entirely open except in so far as their determination in a particular way would be inconsistent with the general tenure of the original judgment. The general rule applies, and this is so, although the matter necessarily determined was not in issue under the pleadings, . . ."

At page 937 of the same volume it is said "A judgment is conclusive as to the facts admitted by the pleadings or assumed by the decision, where they were essential to the judgment, and such that it could not legally have been rendered without them;" and, page 938, "A judgment or decree actually or necessarily determining the personal status of an individual is equally conclusive as a decision on a right of property." For further discussion of the principle that where the right, title or ownership of property is directly put in issue by the pleadings or the course of the litigation, and is tried and determined or by necessary implication must have been determined in order to warrant or justify the judgment rendered such judgment will be treated as conclusive upon the parties and their privies in future litigation, see 34 C. J., p. 938, sec. 1343. The principle announced in the above quotations from Corpus Juris seems to have been recognized by this court in Chouteau v. Gibson, 76 Mo. 38, where the court quoted, at page 47, from Cooley on Const. Lim., 47:

" 'A proposition assumed or decided by the court to be true, and which must be so assumed or decided in order to establish another proposition which expresses the conclusion of the court, is as effec-

tually passed upon and settled in that court as the very matter directly decided.' "

The court further said, l. c. 46, that it is immaterial, as regards the conclusiveness of a judgment, whether the plaintiff in the second action was plaintiff or defendant in the first, provided the point in dispute is the same in both; and the court referred to another well settled rule that when a given matter becomes the subject of litigation in an adjudication by a court of competent jurisdiction the parties are required to bring forward their whole case and will not be permitted, except under special circumstances, to open the same subject of litigation in respect of matters which might have been brought forward "as a part of the subject in contest, but which (were) not brought forward, only because they (the parties) have from negligence, inadvertence or even accident omitted a part of their case."

In McFadin v. Simms, 309 Mo. 312, 273 S. W. 1050, 1055 [8], we said:

" 'If the determination of a question is necessarily involved in the judgment, it is immaterial whether it was actually litigated or not.' [1 Freeman on Judgment (4 Ed.), sec. 272.] 'The judgment, so long as it stands, imports absolute verity as to every proposition of law and fact essential to its existence against all parties to it, and every proposition assumed or decided by the court leading up to the final conclusion and upon which such conclusion is based is as effectually passed upon as the ultimate question which is finally solved.' "

[Consult also, B. Roth Tool Co. v. Champ Spring Co., 146 Mo. App. 1, 123 S. W. 513, 521; Powell et al. v. City of Joplin, 335 Mo. 562, 73 S. W. (2d) 408, 412; Donnell v. Wright, 147 Mo. 639, 49 S. W. 874.] "It is not essential to the operation of a judgment or decree as an estoppel that it should be legally right; it is enough if a court having jurisdiction has decided the point in issue." [2 Black on Judgments, p. 778, sec. 514.]

In the proceedings instituted by the Fidelity National Bank & Trust Company, as trustee, for directions as to the administration of the trust, not only did said trustee in its petition assert ownership by the trustees, as such, of an undivided one-fourth of the real estate here involved, an assertion admitted by their pleadings to be true by these appellants and all others interested, but the court from time to time made orders which could not have been made properly or legally except upon the assumption that such assertion was correct—in short that the trust was valid. Notably, among other orders was one accepting the resignation of said trustee, approving its final settlement in which was listed said one-fourth interest as property owned and held by the trustees under Mrs. Cook's will, appointing a successor trustee, and ordering said property turned over to the appointed successor trustee, to be administered as property of the trust.

In these circumstances, notwithstanding the court retained juris-

diction to make such further orders as might be necessary or appropriate in the further administration of the trust and the management of the trust property, it seems to us the question of the *validity* of the trust was necessarily adjudicated.

But even if said question is not, ·technically, *res adjudicata,* we think appellants are now estopped to assert that the trust is void, or to deny plaintiff's ownership, as trustee, of said one-fourth interest. In Berry v. Cobb et al., 223 Mo. App. 934, 20 S. W. (2d) 296, 298, the court said, quoting from First National Bank of Mexico v. Ragsdale, 171 Mo. 168, 185, 71 S. W. 178, that

" 'To constitute an estoppel *in pais,* three things must concur: First, an admission, statement, or act inconsistent with the claim afterwards asserted and sued on; second, action by the other party on the faith of such admission, statement, or act; and, third, injury to such other party, resulting from allowing 'the first party to contradict or repudiate such admission, statement, or act.'' (Citing authorities.)

Without repeating the facts we have stated we think it clear that all these requisites exist in the instant case. It is our conclusion on this branch of the case that the circuit court should have determined the question of ownership of said one-fourth interest, as we think the pleadings called upon it to do, and should have adjudged said one-fourth interest to be owned by plaintiff, as trustee, and his successor or successors in trust. Since, for reasons to be stated, we are remanding the cause, we leave the formulation of a proper decree to the trial court.

It cannot be seriously contended that plaintiff is not entitled to contribution from appellants for their proportionate shares of the money paid by him in discharge of the deed of trust and to prevent foreclosure. Not only did he make that payment in good faith, in the *bona fide* belief that, as trustee, he was owner of an undivided one-fourth interest in the property covered by the deed of trust, but, as we have hereinabove held, he was such co-owner. Indeed, appellants do not seriously contend that he is not so entitled to contribution from them. They say in the conclusion of their brief:

"They (appellants) have no desire to have their sister, Florence Cook Branine, deprived of those benefits from her mother's will to which the court may determine she was entitled, but appellants do urge that in equity and in justice to an orderly handling of the property that there must be a decree adjudging the title and if the court will order partition and decree the interest of the parties therein, appellants are willing that the court may declare the trust valid and quiet title in the trustee to a one-fourth or declare the trust void and award Florence a full one-fourth interest. Appellants do, however, earnestly urge that there is a cloud upon the title and that under the pleadings and the facts, the title should be determined to the end that they not be 'forced to have always an occasion of falling out, by reason of the undivided possession of a common thing,'

but desire either to part with their undivided titles through a sale of the property as a whole so that they will receive a reasonable return therefor, or else to permit someone to acquire the entire interest in the real estate so that such one will have exclusive control of it. This can be accomplished only if there is a determination of the titles of all parties to this action and so that this real estate can be sold as a whole, in partition, with appropriate decree as to the title and with proper provision for reimbursement of the plaintiff.''

With this frank admission before us we deem it unnecessary to point out authorities or to discuss reasons why plaintiff is entitled to reimbursement and to a lien therefore upon the shares of appellants in the property. Appellants do insist, however, that the equities and the justice of the situation require that the title to the property be determined and that it be sold as a whole, with no cloud upon the title rather than to have undivided interests (especially with title undetermined) sold separately under special executions, resulting, they say, and as we believe, particularly in view of present well known depressed market values of real estate, in sacrifice of the value of the interests sold.

This brings us to consideration of the question whether partition may be adjudged. We believe it can be and should be. It is true, as respondent contends, that under our partition statutes, partition of real estate devised by a will cannot be made contrary to the intention of the testator expressed in his will. [Sec. 1557, R. S. 1929, Mo. Stat. Ann., p. 1736.] Respondent quotes the following provision of Mrs. Cook's will:

'' 'The Trustees may *retain* as part of the trust estate, any of the property owned by me at the time of my death and coming into this trust, *if they deem such action advisable.* . . . But nothing contained herein, however, shall be construed as limiting the power and discretion of the trustee to sell, convey, mortgage, transfer, or otherwise in any way dispose of any property coming to this trust or any part thereof at such time as *in the judgment of the trustee shall be advisable* to so act as to any of said property.' '' (Italics as in respondent's brief.)

That paragraph of the will further provides that ''subject to the right to retain as a part of the trust estate any of the property owned by me at the time of my death coming into this trust'' the trustees shall keep the ''trust estate'' invested in ''high grade securities'' (described). Respondent cites in support of his contention that partition would contravene testatrix' intention as expressed in her will:—Hull v. McCracken (Mo. App.), 53 S. W. (2d) 405; Gibson v. Gibson, 280 Mo. 519, 219 S. W. 561; Cubbage v. Franklin, 62 Mo. 364; Rawlings v. Rawlings, 332 Mo. 503, 58 S. W. (2d) 735; and Brockman v. St. Louis Union Trust Co. (Mo. App.), 44 S. W. (2d) 877. We have examined those cases and without taking space to analyze them we believe there are in all circumstances that distinguish

them from the instant case. We do not mean to abrogate the statute or to depart from its application in prior decisions in circumstances where it has been applied. But does it apply in the circumstances of the instant case? We think not. For one thing, when the trust was created the property—the whole property—was subject to an $18,000 deed of trust placed upon it by testatrix, of which, of course, she knew. The debt was not yet due, as she knew. She knew that if said debt should not be paid the holder could foreclose and sell the whole property, regardless of the wishes of her trustees. She could hardly have meant that her trustees should at all events "retain" in its then form of an undivided one-fourth interest in this property conveyed to them in trust, because she knew that in the course of events they might not be able so to do. We must conclude she did not so intend.

██ If in the case before us partition in kind could be decreed this proposition would give us but little worry. In such case the partition would not create a new title but would only set off to each, in severalty, his or her portion of the whole. [See Powell v. Powell, 267 Mo. 117, 183 S. W. 625 (modified, but not on this point, 267 Mo. 117, 188 S. W. 795).] In that case there was a voluntary partition by deeds among coparceners but we think the reasoning of the court would apply equally to a partition action in which the shares of the coparceners were set off to them respectively in kind. Our statute, Sec. 1545, R. S. 1929, Mo. Stat. Ann., p. 1725, provides that when lands are held in joint tenancy, tenancy in common or coparcenary, any one or more of the owners may apply for and have partition and if the lands cannot be partitioned in kind without great prejudice to the owners they may be sold and the proceeds divided. The right to partition is a valuable right. The will here in question does not restrict the power of alienation given to any of the devisees. The trustees may, if they think best, sell the one-fourth share devised to them and the shares given to the three children, Hale, Ward and Lydia, are given to them absolutely. Plaintiff brought this suit in equity asking that, if necessary to reimburse him for his outlay in protecting the common property, the interests of appellants be sold. The court was asked to and did take jurisdiction. It is familiar doctrine that when a court of equity has the subject matter of a suit within its grasp and has jurisdiction of the parties it will retain jurisdiction until full and adequate justice has been done between the parties. It is not sought in this case to partition the trust property itself as among the *cestuis que truslent* but only to segregate it from the other interests. If the entire property is sold the plaintiff or his successor in trust will still own and hold the *trust* property, the proceeds of sale of the one-fourth share of the realty. In 47 C. J., p. 318, sec. 120, we read:

"Nevertheless, the mere existence of a trust in an undivided interest in property presents no obstacle to a partition of the prop-

erty, since the trustee will still represent the beneficiaries and the trust remain as to their shares."

In our opinion the equities and the justice of this case can best be worked out through a partition sale of the property as a whole if it cannot be partitioned in kind, as from the evidence now in the record we apprehend it cannot, but which will be determined by the court below. Plaintiff, having been reimbursed from the trust estate for its one-fourth of his outlay in discharging the mortgage debt, will hold that one-fourth of the property or its proceeds in trust as provided in the will, the title thereto being settled in him and his successors in trust. Plaintiff is entitled to contribution from appellants for their proportionate shares of said outlay, as heretofore found by the circuit court, with a lien on said respective shares, he to be repaid out of said shares, respectively, if the property is sold in partition, or if it can be and is ordered partitioned in kind then to have his lien on said respective shares, enforceable by such appropriate proceedings as the court may order. The judgment of the circuit court is reversed and the cause is remanded to that court to be proceeded with in accordance with the views herein expressed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.