HATTIE E. BORCHERS, Appellant, v. EARL C. BORCHERS, GRACE A. BORCHERS, EARL CLAY BORCHERS, and EARL CLAY BORCHERS as Guardian *ad litem* for WILMA JUANITA BORCHERS, ROEN VIRGINIA BORCHERS, and BLAINE GILBERT BORCHERS, Appellants, and CAROL R. BORCHERS, MABEL BORCHERS, ET AL., Respondents.—No. 38353. —179 S. W. (2d) 8.

Division One, February 7, 1944.

Rehearing Denied, March 6, 1944.

Motion to Transfer to Banc Overruled, April 3, 1944.

*Emmett J. Bartham* and *John P. Randolph* for appellants.

602

*K. D. Cross* and *Miles Elliott* for respondents.

604

**VAN OSDOL, C.**—Action to partition a small residence property in St. Joseph and a 245 acre farm in Andrew County. A question of homestead was presented and the title to the property was also involved in the construction of a will. The trial court construed the will, found that the plaintiff was not entitled to have a homestead estate set apart to her, and entered an interlocutory decree of partition directing the sale of the property; the court later entered an order confirming the sales made pursuant to the decree. Plaintiff and certain of defendants have appealed.

Plaintiff-appellant is the widow of James B. Borchers, who died (seised of the real property) testate in 1937 at the age of 80 years. Parties defendant are the two sons, Earl C. Borchers and Carol R. Borchers (and their consorts), of James B. Borchers and plaintiff; and the four children of the son, Earl C. Borchers, three of whom are infants. Defendants, Earl C. Borchers and wife; defendant, Earl Clay Borchers, son of Earl C. Borchers; and defendants Wilma Juanita Borchers, Roen Virginia Borchers and Blaine Gilbert Borchers, infants (also children of defendant Earl C. Borchers) of whom defendant Earl Clay Borchers is guardian *ad litem*, join in the appeal. Defendant-respondent, Carol R. Borchers, was the purchaser of both properties at the partition sales.

James B. Borchers, by will duly signed and witnessed in 1925, devised and bequeathed his property real and personal to plaintiff-appellant for life. The will provided, "It is my will that upon the death of my wife all the remainder of the property . . . be di-

vided as follows, . . . '' Cross-remainders were devised to the defendant-appellant, Earl C. Borchers; defendant-respondent, Carol R. Borchers; and defendants-appellants, children of Earl C. Borchers. And the will further provided, ''that at any time after the death of my wife, but not before, my said executors and trustees Earl C. Borchers and Carol R. Borchers, should they both so deem it fit and proper, but under no other condition, may sell or exchange said real estate or other property then remaining and divide the proceeds of such sale or exchange according to the true intent and tenor of the other provisions of this will.''

The widow, plaintiff-appellant, renounced the will and elected to take election dower, a child's part of the real property (one-third under the facts) absolutely. Other facts are stated infra.

Questions are presented for review—(1) should the property have been partitioned before the death of plaintiff-appellant, in view of the provisions of the will; (2) should not a homestead have been set apart to plaintiff-appellant, or had it been abandoned; (3) cannot a plaintiff in an action in partition, by written request made to the sheriff after the property is advertised for sale pursuant to the court's order, cause the postponement of the sale; (4) was not the sales price inadequate. No error of the trial court in the construction of the will is assigned.

A court of equity takes cognizance of the issues of the construction of a will and the trial court and the parties appear to have tried the cause as one in equity.

(1) Appellants contend that the decree of partition was contrary to the intention of the testator as expressed in the will. Respondents urge that appellants are estopped by their pleadings from raising this question, asserting that plaintiff-appellant prayed for partition and, in her exceptions to the reports of sale, prayed for a resale of the property; that the appellant, Earl C. Borchers, by answer, in effect, joined in the prayer for partition, and that the appellant, Earl Clay Borchers, and the appellants, Wilma Juanita Borchers, Roen Virginia Borchers, Blaine Gilbert Borchers, by their guardian *ad litem,* prayed for a ▮ sale in partition and the distribution of the proceeds of such sale. Respondents' assertion of the relief sought by appellants' original pleadings is a correct one. However, defendant-appellant, Earl Clay Borchers, for himself and as guardian *ad litem* of the infant appellants, pending the hearing on exceptions to the reports of the sheriffs' sales, modified his position, interposing an objection to the sale of the property. He was permitted by the court at that time to amend the exceptions to the reports of sale by striking therefrom the prayer that the property be resold and the proceeds distributed; and the appellants, other than plaintiff, in their motions for a new trial and, as stated, herein assign error of the trial court in entering the interlocutory decree of partition.

As has been observed, the remainder of the property was directed by the testator to be *divided upon the death* of the life tenant, and the will further provided that a sale of the property devised might be made after the death of the life tenant, *but not before*—can plaintiff-appellant maintain the action to partition notwithstanding?

It is provided by law that no partition or sale of real property devised shall be made contrary to the intention of the testator expressed in the will. Section 1721, R. S. 1939, Mo. R. S. A., sec. 1721. See Crossan v. Crossan, 303 Mo. 572, 262 S. W. 701; Dennig v. Mispagel et al. (Mo. Sup.), 260 S. W. 72; Shelton v. Bragg (Mo. Sup.), 189 S. W. 1174; Hill v. Hill, 261 Mo. 55, 168 S. W. 1165; Stewart v. Jones, 219 Mo. 614, 118 S. W. 1; Stevens v. De La Vaulx, 166 Mo. 20, 65 S. W. 1003. However, they, who instituted the actions in partition reviewed in these cases, were devisees (or their grantees) asserting rights which arose under the wills involved in the respective cases (Cf. Dobschutz v. Dobschutz, 279 Mo. 120, 213 S. W. 843). Of them it may be said, "those who take of his (testator's) bounty must take it on the terms he imposes." Stevens v. De La Vaulx, supra.

The renunciation of the will by plaintiff-appellant, widow, did not affect the restrictions upon the remaindermen; but *nullified the will as to her*. Crossan v. Crossan, supra.

The renunciation of the will, and the election to take a child's share, vested in the widow, plaintiff-appellant, a (one-third) share of the lands of her deceased husband absolutely. Sections 333 and 328, R. S. 1939, Mo. R. S. A., secs. 333 and 328; Lee's Summit B. & L. Ass'n. v. Cross, 345 Mo. 501, 134 S. W. (2d) 19. Regardless of whether the renunciation of the will by the widow accelerated the remainders in the remaining two-thirds share of the lands, whether the title to the remaining share passed to the heirs to be divested and vested in the contingent remaindermen at the death of the widow, or whether the title to such remaining share was vested in the trustees named in the will, the plaintiff-appellant became, by her renunciation and election, the owner in fee simple of a one-third share and a tenant in common with the owners of the remaining two-thirds share of the lands. As such she was entitled to maintain an action to partition the property. Atkinson v. Brady, 114 Mo. 200, 21 S. W. 480; Rupp v. Moliter, 320 Mo. 938, 9 S. W. 2d 609; Virgin v. Kennedy, 326 Mo. 400, 32 S. W. 2d 91; Cooper v. Cook et al., 347 Mo. 528, 148 S. W. 2d 512; 47 C. J., sec. 120, p. 318.

(2) Statutes providing for an election dower are not inconsistent with statutes providing for a homestead estate. Such statutes should be construed together and, in the instant case, plaintiff-appellant, having (after her renunciation of the will) elected to take a child's share absolutely of the lands of her deceased husband, may retain a homestead estate in the property (Stanton v. Leonard, 344 Mo. 998,

130 S. W. 2d 487), if under the evidence such an estate obtained and has not been abandoned.

Plaintiff-appellant in her petition negatived the abandonment issue; no one of the defendants affirmatively pleaded an abandonment of the homestead; but the case was tried on the theory that the issue was presented.

James B. Borchers and plaintiff resided on the farm from 1889 until 1917 when they rented, and removed to, a small house in nearby Rosendale. They left all personalty (except some furniture) on the farm in charge of the defendant-respondent Carol. In 1920 they removed to a house owned by plaintiff; in 1925, the house of plaintiff having burned, their furniture was stored, and .they "stayed about six weeks" on the farm, and then removed to a house owned by the son, defendant-appellant Earl, at ▮ Savannah, where they lived until the husband's death, and where the plaintiff had continued to reside until the time of trial. James B. Borchers received no (cash) rent from the son Carol; the net proceeds of sales of livestock and other products of the farm were divided between them, the relationship of the father and son being held by the trial court to be that of partnership; the parents got much of their sustenance from the farm. Plaintiff testified that she and her husband had no intention of abandoning the homestead; that they "always intended to return to the farm should the occasion arise." A witness for defendant-appellant, Earl C. Borchers, testified that in 1935 the husband stated that he "expected to go back out to the farm to remain the rest of his days in his own home place." Three witnesses testified that James B. Borchers had declared, in substance, that "he was too old to ever go back to the farm and that he wasn't going back." In 1935 the husband, applying for a bank loan, made a financial statement in which he listed the farm as a homestead; circumstances of the making of the statement make it of little or no evidentiary value on the issue, however.

The evidence shows no objection on the part of the plaintiff-appellant to the removal from the family farm home to Rosendale in 1917. The inquiry upon the issue narrows to the question of whether it was the intention of James B. Borchers to return to reside upon the farm as the family home. The extended period of time which intervened between the removal from the farm in 1917 until the death of James B. Borchers in 1937, and the declarations of the husband "that he wasn't going back," are clearly evidence that he had no such intention. The testimony of plaintiff-appellant tends to prove the contrary and, according to the testimony of other witnesses, the husband had made conflicting declarations of intention. The trial judge as the trier of the fact had the better opportunity of judging the credibility of the witnesses and determining the weight and value of their testimony. We are not satisfied that the chancellor's finding was

608

against the weight of the evidence, and we defer to his finding upon the issue.

(3) Plaintiff-appellant served, upon the sheriffs (and caused to be read to those assembled) just prior to the sales of the two tracts, notices by which he sought to "withdraw" the sales of the property. The notice, pertaining to the sale of the farm land, is as follows:

"This is to advise you that because of the existing condition due to adverse weather, the war, and other things unfavorable, I am hereby withdrawing the sale of the James B. Borchers' farm which you have advertised for partition sale today, Saturday, March 14, 1942.

"You will please govern yourself accordingly."

It is contended by plaintiff-appellant that she had the right to "direct her agent," the sheriff, "to not hold the sale at a particular time"; and that the sales made after the service of the notices were made without authority and voidable.

The sheriff in making the sale acted for all of the parties. Gore v. Burdette, 175 Mo. App. 389, 162 S. W. 321. When property is ordered sold in partition, the sheriff under the law is required to proceed to advertise and sell the property "in due time." Section 1745, R. S. 1939, Mo. R. S. A., sec. 1745. It is right that a sheriff should proceed pursuant to the court's order, and should sell the property on the date advertised, unless otherwise directed by the court; especially in the instant case wherein the request for the postponement, or "withdrawal," was not made by all of the (owners) interested parties.

(4) At the sheriffs' sales the farm sold for the sum of $6000; the residence property, $330. "There seemed to be a good many people standing around" at the sale of the farm land at Savannah, although "the roads had been blocked with snow drifts considerably." The farm land is improved—a seven-room house, barns, granaries, chicken houses and garage. The farm land is incumbered to secure a debt of $4500. About 80 acres are in pasture with some outcroppings of rock; the balance of the farm is tillable, save 10 or 15 acres in timber. Much of the tillable land has not been "broken out" for several years. A public highway divides the farm; 80 acres lie south of the highway; the improvements are located on the larger tract, north of the highway. Several witnesses stated that the improvements are in great need of repair and there is a conflict in the testimony on whether the farm has an adequate water supply. A receiver had collected $850 cash rental for a term somewhat less than a year. A witness for appellants stated the reasonable market value of the farm to be $35 per acre; another ▇ that, if the land were again sold, he would bid and pay $7000 and that he would make this bid only because he believes the farm to be worth twice that sum. Witnesses for respondents state the value of the farm to be $20 to $25 per acre.

A witness for appellant testified that he would pay "at least $450 for the Buchanan County property"; this was all of the testimony introduced upon the question of the value of the residence property at St. Joseph.

A confirmation or rejection of a sale in partition is within the sound discretion of the trial court. Pomeroy v. Allen, 60 Mo. 530; Patton v. Hanna, 46 Mo. 314; Tatum v. Bernard (Mo. App.), 49 S. W. 2d 1083. It is the general rule that inadequacy of price is not a sufficient ground for refusing to confirm a sale in partition, unless the inadequacy is so gross as to raise the presumption of fraud. Should the price be inadequate and should there be circumstances attending the sale tending to cause such inadequacy, or where the rights of infants are jeopardized, the general rule does not apply. 47 C. J., secs. 773-4, pp. 557-8. In the instant action the rights of infants are involved. The plaintiff-appellant caused the notice, supra, to be read to those assembled at the sales; this, and weather conditions, could have tended to discourage a free vendue and attendance. So we look to the evidence upon the question of whether the sales prices were inadequate. Evidence of an offer, made after a partition sale, of a price higher than that which the property brought at the sale does not in itself prove that the sales price was inadequate. Aside from the testimony of the witnesses who stated that they would pay higher prices for the properties if resold, the sales prices appear not to have been inadequate; and we hold that under all of the evidence, relevant on the issue, the trial court exercised sound discretion in confirming the sales.

The judgment should be affirmed.

It is so ordered. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.