**Sheila D. PLANT, Plaintiff–Respondent,**

v.

**Robert Lloyd PLANT, Defendant–Appellant.**

**No. 17480.**

Missouri Court of Appeals,
Southern District,
Division One.

March 18, 1992.

Donald L. Cupps, Ellis, Ellis & Cupps, Cassville, Ransom A. Ellis, Jr., Ellis, Ellis & Black, Springfield, for defendant-appellant.

Emory Melton, Cassville, for plaintiff-respondent.

PARRISH, Judge.

Respondent (Sheila) brought an action for partition of certain real estate situate in Barry County, Missouri, that she and appellant (Robert), her former husband, owned as tenants in common. The trial court entered an Interlocutory Judgment in Partition that included a finding that the property could not be divided in kind and an order for the sale of the real estate. Rule 96.19. The order of sale directed the Sheriff of Barry County to conduct the sale. The sheriff caused a notice of sale to be published as required by Rule 96.21 and on December 28, 1991, sold the real estate. The sheriff's report of sale was filed. Rule 96.26.

The trial court entered its order, entitled Report of Sale Approved and Order of Distribution, approving the sale and ordering the sheriff to "execute a good and sufficient deed to the purchaser." It directed payment of expenses of sale, sheriff's fees and court costs, and ordered distribution of the balance of the proceeds of the sale. Rules 96.27 and 96.30. Robert filed a Motion to Set Aside Sheriff's Deed in Partition and to Reschedule Partition Sale. The trial

court denied the motion. Robert appeals. This court affirms.

The notice of sale was published in a newspaper in Barry County, the Cassville Democrat, on December 5, 12, 19 and 26, 1990. It announced that the sale would be conducted:

On Friday, December 28, 1990, between the hours of nine o'clock in the forenoon and five o'clock in the afternoon of that date at the courthouse door in the City of Cassville, County of Barry, State of Missouri, . . . .

The sale was held December 28, 1990, at the Barry County Courthouse. Joe Cotton, Sr., and Sheila purchased the real estate at the partition sale for the sum of $6,000. Neither Robert nor his attorney attended the sale. On January 2, 1991, Robert's attorney asked Sheila's attorney when the sale would be held. He was told that it had already taken place.

Robert's first point on appeal is directed to the trial court's order denying the Motion to Set Aside Sheriff's Deed in Partition and to Reschedule Partition Sale. Robert contends that the trial court erred in denying that motion. He claims that "the trial court's order of sale did not comply with the mandatory requirements of V.A.M.R. 96.19, in that the place of sale was not specified. The order of sale was invalid on its face." Robert argues that (1) because his "identity was known or was reasonably ascertainable" and (2) because the sale of his "interest in the partitioned property" occurred "without actual notice," it constituted "a taking of [his] property without due process."

Robert contends that the "best notice possible" must be given "before property can be judicially taken from anyone"; and that the constructive notice given by publication of the notice of sale had to be "supplemented by actual notice."

■ Rule 96.19 states, with respect to the order of sale in an action for partition:

The order shall prescribe the terms, place and who shall conduct the sale; it shall not specify the date of sale. The clerk shall deliver a certified copy of the order of sale to the sheriff or commissioner who shall conduct the sale. The sheriff or commissioner shall advertise and sell the land.

The trial court's order of sale was part of its Interlocutory Judgment in Partition. The order of sale states:

THE COURT THEREFORE ORDERS the property be sold in accordance with the laws of the State of Missouri by the Sheriff of Barry County, Missouri, to the highest bidder for cash, and that the proceeds of said sale be partitioned between the parties herein according to their respective interests after payment of all costs, and that the Sheriff make a report of such sale within the time required by law.

Section 528.590 [1] provides, regarding sales of real estate subject to partition actions:

All sales of real estate by . . . any sheriff, shall be at the courthouse door, and in term time of the circuit court or county commission, as may be directed by the order of the court; provided, that in all cities in this state now or hereafter containing one hundred thousand inhabitants or more, such sales shall be on the floor of the real estate exchange or at the courthouse door, as may be directed by the order of the court.

Robert cites two authorities in support of his argument that the sheriff's notice of sale was "invalid on its face." He cites the part of Rule 96.19 that states, "The order shall prescribe the terms, *place*, and who shall conduct the sale; . . . ." (Emphasis added.) He also cites *Keith v. Keith,* 599 S.W.2d 214 (Mo.App.1980), for the proposition that "[t]he term 'shall' in the rule is mandatory." The remainder of Robert's argument, in its entirety, that is directed to his first point on appeal states:

The Court's Order of Sale makes no reference to a place of sale. Such an

---

**1.** References to statutes are to RSMo 1986 other than the reference to Mo.R.S.A., § 857.199, *infra.*

omission fatally flaws the order. Failure to prescribe the place of sale grants the Sheriff a roving commission to conduct the sale when and where he chooses.

*Keith v. Keith, supra,* was an action in partition. The issue on appeal in that case was whether the real estate consisted of a single tract for purposes of sale or of "distinct tracts" that were required to be sold in parcels rather than as a single tract. In *Keith,* there were minute differences in the ownership interests in contiguous tracts of real estate. This court held that those differences made the tracts "distinct tracts." *Id.* at 219. As such, they were subject to the rule that "there shall be separate sales of distinct tracts." Different issues were presented in *Keith* than in this case. The language in *Keith* upon which Robert relies deals with the meaning of former Rule 96.39 (repealed). That rule dealt with partition sales of "premises consist[ing] of distinct buildings, farms, tracts or lots of land." It was repealed effective January 1, 1981. The holding in *Keith* has no applicability to this case.

The trial court's order of sale directed that "the property be sold in accordance with the laws of the State of Missouri." Sheila argues that "the laws of the State of Missouri" that are applicable are found in Rules 96.20 and 96.21; that those rules require that a partition sale of land, all of which is located in a single county, "shall be held in that county." *See* Rule 96.20. Sheila concludes that the "place" in Rule 96.19 refers to the county in which the sale will be held; that the trial court, by directing that the sale was to be conducted by the Sheriff of Barry County, was cognizant that the sheriff had no authority to act outside of Barry County. She contends that the language used by the trial court in its order of sale was sufficient to prescribe the "place" of the sale for purposes of Rule 96.19; there being only one place that § 528.590 permitted the sheriff to conduct the sale, the Barry County courthouse door.

Rule 96.21 directs the sheriff to publish "notice of a sale in partition." If the land being sold is located in a single county, as it was in this case, that notice is published in that county. Rule 96.21. The sheriff's notice of sale, given for the purpose of carrying out the trial court's order of sale, stated that the sale would be conducted "at the courthouse door in the City of Cassville, County of Barry, State of Missouri." *See* § 528.590 and Rule 96.20. The order of sale did not give the sheriff "a roving commission to conduct the sale when and where he [chose]."

The notice of sale, not the trial court's order of sale, advises interested parties of the time, location and nature of the sale. The language in the notice of sale is the critical language for purposes of conveying information to parties who are interested in the partition sale. The notice of sale in this case was given in the manner required by Rule 96.21. The information it conveyed was precise. It was consistent with the directives in the order of sale and was in compliance with applicable law. The language in the notice of sale is not a mere restatement of the order of sale. The criticism that Robert directs to the order of sale is not applicable to the notice of sale. The purpose of the order of sale was to provide the sheriff with directions sufficient to permit him to compile and publish the requisite notice of sale and to conduct the sale. The language of the order of sale was adequate for that purpose. This court holds that it was not invalid on its face.

Robert next contends that the constructive notice provided by publication of the notice of sale was not sufficient. He bases that claim upon the Fourteenth Amendment right of due process that is explained in *Tulsa Professional Collection Services v. Pope,* 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988); *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983); and *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

Of the cases Robert cites, the first to be decided was *Mullane, supra. Mullane* originated in the state of New York as a result of procedures permitted by that state's law regarding the administration of

certain trusts by corporate trustees. New York law permitted assets in small estates administered by a corporate trustee to be pooled into one fund for purposes of investment administration. Income, capital gains, losses and expenses in the "collective trust" were shared by individual trusts in proportion to their contributions of the assets that were administered. The common trustee of such a fund was required to file accountings and obtain judicial settlements within twelve to fifteen months after the establishment of the fund and every three years thereafter. Central Hanover Bank & Trust Co. had petitioned a New York Surrogate's Court for settlement of its first account as common trustee. The collective trust fund included 113 participating trusts. Notice of the filing of the petition seeking settlement was given by publication in accordance with the applicable state law. No other notice was given. The published notice identified only "the name and address of the trust company, the name and the date of establishment of the common trust fund, and a list of all participating estates, trusts or funds." 339 U.S. at 310, 70 S.Ct. at 655. The court held, as to persons whose whereabouts were known and who had property interests in individual trusts with assets that were a part of the collective trust, that the publication was inadequate; that the notice was "incompatible with the requirements of the Fourteenth Amendment as a basis for adjudication ... of substantial property rights." *Id.* at 320, 70 S.Ct. at 660. The court stated:

> The trustee has on its books the names and addresses of the income beneficiaries ..., and we find no tenable ground for dispensing with a serious effort to inform them personally of the accounting, at least by ordinary mail to the record addresses.

*Id.* at 318, 70 S.Ct. at 659.

Over thirty years after *Mullane* was decided, the Supreme Court handed down its opinion in *Mennonite, supra. Mennonite* originated in Indiana. It involved the sale of real estate in order to satisfy delinquent real estate taxes on the property. Indiana statutes required the county auditor to post notices in the county courthouse of scheduled sales of real property for nonpayment of property taxes. Weekly publication of notice was also required for three consecutive weeks. Indiana law required the property owner to be given notice of the sale by certified mail. Notice was not required to be given to mortgagees by mail or by other personal service. The court held that Indiana's notice requirements failed to satisfy due process requirements of the Fourteenth Amendment with respect to mortgagees; that mortgagees had legally protected property interests that entitled them to reasonable notice calculated to apprise them of pending tax sales of the property that was their collateral. The court relied on *Mullane* for the principle that if a mortgagee is reasonably identifiable, "constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known available address, or by personal service." [2] 462 U.S. at 798, 103 S.Ct. at 2711. The court found that a publicly recorded mortgage was sufficient to permit a mortgagee to be identified and be entitled to receive notice other than by publication. *Id.*

Of the three cases cited by Robert, the one most recently decided is *Tulsa Professional Collection Services, supra*. It applied the Fourteenth Amendment due process principles that were enunciated in *Mullane* to a nonclaim provision of Oklahoma's probate code. Under the Oklahoma nonclaim provision, creditors' claims against decedent's estates were barred unless presented to the personal representative within two months after publication of a notice of commencement of probate proceedings. Oklahoma law required no other notice to be given to creditors in order for the nonclaim period to commence. *Tulsa Professional Collection Services* held that a claim against a decedent's estate is a property interest protected by the due

---

**2.** *Mennonite* has been followed in Missouri with respect to sales of real estate to satisfy delinquent taxes. *See Lohr v. Cobur Corp.,* 654 S.W.2d 883 (Mo. banc 1983); and *Bankers Union Life Ins. Co. v. Floy Hanks & Mistwood, Inc.,* 654 S.W.2d 888 (Mo. banc 1983).

process clause of the Fourteenth Amendment, and if the identity of the holder of such a claim, a creditor, is known, due process requires that such a creditor be given actual notice by mail or otherwise in addition to constructive notice by publication.[3] 485 U.S. at 483, 108 S.Ct. at 1344.

Relying upon the principles of *Mullane* and its progeny, Robert argues that because he was not notified of the date of the partition sale by means other than by publication, since his identity was known or reasonably ascertainable, the partition sale resulted in the taking of property from him without due process of law; that he was not afforded the due process protection to which the Fourteenth Amendment entitled him. Robert also sets out separate, but intertwined, arguments that "Missouri courts ... have adopted a 'best notice possible' rule before property can be judicially taken from anyone"; and that "[c]onstructive notice by publication alone is not sufficient to afford due process to a defendant whose name and address are known or can be easily ascertained, and must be supplemented by actual notice." As these arguments are inseparable and all are directed to Robert's claim of trial court error, they will be discussed together.

■ In arguing that he was entitled to be contacted by Sheila or her attorney and to be told the date of the partition sale, Robert is treating the partition sale that was conducted by the Sheriff of Barry County as if it were a proceeding separate from the partition action to which he was a party. Although the questions presented on appeal have been submitted on the basis of an "agreed statement as the record on appeal" as permitted by Rule 81.13, the "agreed statement" does not recite the extent of Robert's participation in the case as it proceeded to final judgment. The Interlocutory Judgment in Partition that is included as an attachment to the "agreed statement" recites, however, that on the date it was entered, Robert appeared "by his attorney of record." It is apparent that Robert participated in this case from its inception or, in any event, from and after the time the initial judicial determination was made—when the Interlocutory Judgment in Partition was entered. He was either served with process at the inception of the judicial proceeding, or he waived service and entered his appearance as a party to the proceeding. As such, he was "properly summoned" and "[was] charged with notice of all subsequent proceedings, though no actual notice [was] received." *Courtin v. McGraw Const. Co.*, 639 S.W.2d 286, 288 (Mo.App.1982). That being so, Robert had notice that the real estate was to be sold and that the Sheriff of Barry County was ordered to conduct the sale. This differs from the situations that existed in *Mullane, Mennonite* and *Tulsa Professional Collection Services.*

In those cases the parties whose property interests were in jeopardy had no actual knowledge that judicial proceedings that could affect their property interests were pending. Beneficiaries of individual trusts were given no actual notice in *Mullane* regarding the fact that approval of an accounting had been sought in a state Surrogate's Court in order for them to contest the items that affected their property interests for which judicial approval was sought. Mortgagees in *Mennonite* were given no actual notice that real estate that was encumbered by the mortgages they held would be sold, free and clear of their mortgages, for nonpayment of taxes. In *Tulsa Professional Collection Services,* the assignee of an account receivable that had accrued by reason of the last illness of a decedent was given no actual notice that a decedent's estate had been opened in which the assignee was required to file a claim during a nonclaim period in order to collect the account receivable. Had the interested parties in those cases known

**3.** *Estate of Busch v. Ferrell–Duncan Clinic, Inc.,* 700 S.W.2d 86 (Mo. banc 1985), is cited in *Tulsa Professional Collection Services* and discussed with regard to that case being one upon which the Oklahoma court relied in reaching the decision that the U.S. Supreme Court reversed. The effect of *Tulsa Professional Collection Services* (referred to as *Pope*) on Missouri's nonclaim requirements is commented upon in *dictum* in *Missouri Highway & Transp. Comm'n v. Myers,* 785 S.W.2d 70, 74 (Mo. banc 1990).

that judicial proceedings had been commenced, knowledge such as Robert had in this case, they could have monitored the proceedings and taken such actions as were appropriate. The lack of actual notice that judicial proceedings had begun was what *Mullane, Mennonite* and *Tulsa Professional Collection Services* addressed. In this case, Robert had actual notice that judicial proceedings had begun.

Robert was a party to the partition action. He had actual knowledge that the real estate would be sold, and that the Sheriff of Barry County would sell it. A telephone call to the Sheriff of Barry County could have provided Robert with the date of the sale. Monitoring the appropriate newspaper or newspapers in Barry County after the Interlocutory Judgment in Partition that included the order of sale had been entered could have provided Robert with the information. Similar to the situation in *Missouri Highway & Transp. Comm'n v. Myers*, 785 S.W.2d 70, 75 (Mo. banc 1990), the "flow of information" that was Robert's as a result of his being a party to the action in partition amounts to "actual notice." His inactions in keeping himself apprised of the status of the pending sale after the order of sale was entered go unexplained. The need for personal notice that existed in *Mullane, Mennonite* and *Tulsa Professional Collection Services* did not exist in this case. The partition sale was not a taking of Robert's property without due process.

■ As the circumstances in this case differ from those in *Mullane, Mennonite* and *Tulsa Professional Collection Services,* its circumstances differ from those in the cases Robert cites in support of his claim that Missouri has "adopted a 'best notice possible' rule before property can be judicially taken from anyone" that is applicable to this case. Robert cites *Hoppe v. St. Louis Public Service Co.*, 361 Mo. 402, 235 S.W.2d 347 (banc 1950); and *McDonald v. McDonald*, 766 S.W.2d 715 (Mo.App. 1989).

In *Hoppe,* the trial court had vacated a judgment "of its own initiative," twenty-nine days after it had been entered without first giving notice to the party in whose favor judgment had been entered in order that he could appear and be heard. The trial court's action was undertaken pursuant to a statute similar to provisions in present Rule 75.01. The applicable statute was Mo.R.S.A. § 857.119,[4] that stated:

> Not later than 30 days after entry of judgment, the court of its own initiative may order a new trial for any reason for which it might have granted a new trial on motion of a party, and every order granting a new trial shall specify the grounds therefor.

The supreme court held, "Reasonable notice to parties whose interests are at stake in a contemplated order is a prerequisite to the lawful exercise of the court's power." 235 S.W.2d at 350. This was required "even though the giving of notice is not required by statute." *Id.*, quoting 66 C.J.S. Notice § 14, p. 652 (1950). Robert argues that this principle requires "that even though V.A.M.R. 96.19 makes no requirement for notice, nevertheless the 'law will imply that notice was intended.'" This is a misapplication of the principle that was stated in *Hoppe.* In this case, Robert had notice of the order of sale. Robert had an opportunity to be heard before the order of sale was entered. In *Hoppe* the party who was affected by the trial court's order granting a new trial had no notice that the perceived order would be entered and no opportunity to be heard before it was entered. It is this type of notice that "the law will imply" if not otherwise required. The holding in *Hoppe* is not applicable to this case.

Robert cites *McDonald, supra,* and quotes the following language:

> It has been clearly established that due process requires that the best notice possible must be given before property can be judicially taken away from anyone. *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), S.Ct. at [3–6]. The law will imply notice when it is legally required.

4. *See* 2 Carr, Missouri Civil Procedure, ch. 17, § 857 (1947).

*Hoppe v. St. Louis Public Service Co.*, 361 Mo. 402, 235 S.W.2d 347 (banc 195[0]) [7].

766 S.W.2d at 718. Robert fails, however, to consider the nature of that case. *McDonald* is not an action in partition. The material quoted in Robert's brief is totally unrelated to the issue on appeal in this case. *McDonald* was an appeal by an intervenor in an action to collect child support. Appeal was taken from the trial court's denial of the intervenor's motion to quash an execution. A former wife of Woodie McDonald sought to satisfy a judgment for child support by executing on an automobile jointly owned by her former husband, the judgment debtor, and intervenor. The court held that execution is limited to the "interest of the obligor," the former husband, in the property. The discussion of constitutional issues in *McDonald* relate to the intervenor's joint interest in the property with the former husband. Further, although the constitutional issues were discussed, the case was decided without reaching those issues. The court reversed the trial court's order denying the intervenor's motion to quash the execution on the basis that "[t]here existed no statutory authority for the sale by the sheriff of the interest of the intervenor." 766 S.W.2d at 720. *McDonald* is of no assistance to Robert.

The last argument that Robert directs to his first point on appeal is, "Constructive notice by publication alone is not sufficient to afford due process to a defendant whose name and address are known or can be easily ascertained, and must be supplemented by actual notice." This argument has no merit under the facts of this case. Robert had actual notice of these judicial proceedings while the case was before the trial court. He was a party to the action in partition. He was an active participant in it. The trial court committed no error in denying Robert's motion seeking to set aside the sheriff's deed and to reschedule the partition sale. Robert's first point is denied.

■ Robert's second point relied on states:

While the trial court is vested with discretion in confirming or refusing to confirm a sale in partition, the trial court here abused that discretion in refusing to set aside and reschedule the sale.

1) The order of sale was unlawful on its face and should have been set aside as a matter of law.

. . . . .

2) In any event, there were circumstances attending the sale which tended to cause a price inadequacy.

. . . . .

Rule 84.04(d) sets forth the requirements for points relied on in appellate briefs. It states:

The points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous, with citations of authority thereunder....

Setting out only abstract statements of law without showing how they are related to any action or ruling of the court is not a compliance with this Rule.

These requirements were explained in *Bentlage v. Springgate*, 793 S.W.2d 228, 229 (Mo.App.1990):

Three things are required with respect to points relied on: (1) a statement of the action or ruling of the trial court about which the party complains; (2) a statement that specifies why the ruling was erroneous; and (3) a statement informing the appellate court wherein the evidence at trial supports the position the party asserts the trial court should have taken.

In his second point, the ruling of the trial court about which Robert complains is the order that denied his Motion to Set Aside Sheriff's Deed in Partition and to Reschedule Partition Sale. However, Robert's second point does not state "wherein and why" that ruling was erroneous. The part of Robert's second point that is denominated subparagraph 1 proclaims that the order of sale was "unlawful on its face and should have been set aside as a matter of law." Arguably this could be construed as stating "why" Robert considers that the

ruling was erroneous. Subparagraph 1 contains nothing, however, that explains "wherein" the evidence or other record from the trial court supports the position Robert asserts the trial court should have taken—the point does not state what was unlawful about the order of sale.

The part of Robert's second point that is denominated subparagraph 2 is likewise deficient. It proclaims "there were circumstances attending the sale which tended to cause a price inadequacy." Subparagraph 2 does not state why the ruling was erroneous nor does it state what in the record on appeal supports Robert's claim that the trial court should have set aside and rescheduled the partition sale. Subparagraph 2 does not explain "wherein and why" the ruling of the trial court was erroneous.

■ Robert's second point on appeal preserves nothing for appellate review. Notwithstanding, this court notes that the subject to which subparagraph 1 alludes, the validity of the order of sale, has been addressed elsewhere in this opinion. As the trial court did not commit error in denying Robert's Motion to Set Aside Sheriff's Deed in Partition and to Reschedule Partition Sale based upon the content of the order of sale, it did not abuse its discretion by the ruling it made. As to the subject to which subparagraph 2 alludes, the price the property subject to partition brought at the partition sale, the trial court specifically found that there was nothing with respect to the price that suggested fraud. "It is the general rule that inadequacy of price is not a sufficient ground for refusing to confirm a sale in partition, unless the inadequacy is so gross as to raise the presumption of fraud." *Borchers v. Borchers*, 352 Mo. 601, 179 S.W.2d 8, 12 (1944). "A confirmation or rejection of a sale in partition is within the sound discretion of the trial court." *Id.*, citing *Pomeroy v. Allen*, 60 Mo. 530 (1875); *Patton v. Hanna*, 46 Mo. 314 (1870); and *Tatum v. Bernard*, 49 S.W.2d 1083 (Mo.App.1932). As it was within the discretion of the trial court to confirm the partition sale, it was within its discretion to deny Robert's motion that sought to set aside the sheriff's deed.

■ Robert appears to argue that although there was no fraud, his absence from the sale created a chilling effect that is evidenced by the low price the property brought at the sale. The property brought $6,000 at the sale. The decree that dissolved Robert's and Sheila's marriage, dated December 13, 1989, awarded the property to the two of them. The words "with a mobile home" appear in the decree of dissolution of marriage immediately after the legal description of the real estate. After those words are the additional words, "with a fair market value of $25,000." This court has nothing more in the record before it regarding the value of the property sold at the partition sale and the sale price at the partition sale.

There is nothing in the record on appeal that would permit this court to find that the trial court abused its discretion in not setting aside the sheriff's deed because Robert did not attend the partition sale. As stated in *Robert R. Wisdom Oil Co., Inc. v. Gatewood*, 682 S.W.2d 882, 885 (Mo. App.1984), "The fact that an interested party does not attend a judicial sale does not per se establish a basis for relief."

Although Robert's second point on appeal does not comply with Rule 84.04(d), a gratuitous review of the issues gleaned from the argument of Robert's brief discloses no abuse of discretion by the trial court. This court is "guided by the general principle that approval of judicial sales rests largely in the discretion of the trial court and its action in confirming or in setting aside a sale will not be interfered with unless there is a manifest abuse of discretion." *Koester v. Koester*, 543 S.W.2d 51, 53 (Mo.App.1976). Robert's second point is denied. The judgment is affirmed.

PREWITT, P.J., and CROW, J., concur.